# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

_____

### NOS. 23-2155 & 23-2156

_____

**UNITED STATES OF AMERICA,**

        **Plaintiff/Appellant,**

  **vs.**

**THOMAS CROSBY,**

        **Defendant/Appellee.**

_____

**Appeal from the United States District Court
For the District of New Mexico
District Court Nos. 1:22-cr-864-DHU & 1:20-cr-1766-DHU
Hon. David Herrera Urias, United States District Judge**

_____

## APPELLANT'S OPENING BRIEF – ATTACHMENTS

_____

## ORAL ARGUMENT IS REQUESTED

                                     **ALEXANDER M.M. UBALLEZ**
                                     United States Attorney

                                     **TIFFANY L. WALTERS**
                                     Assistant U.S. Attorney
                                     Post Office Box 607
                                     Albuquerque, NM  87103
                                     (505) 346-7274
                                     Attorneys for Appellee

**December 2023**

## <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

TABLE OF CASES AND OTHER AUTHORITIES..........................................iv

PRIOR OR RELATED APPEALS...................................................................vii

JURISDICTIONAL STATEMENT ....................................................................1

INTRODUCTION AND ISSUE PRESENTED FOR REVIEW........................1

STATEMENT OF THE CASE AND THE FACTS.............................................3

I.      Crosby is caught in New Mexico in possession of child
        pornography on his cell phone and on other devices.........................3

II.     Crosby is arrested in Pennsylvania in possession of more child
        pornography ..........................................................................................5

III.    The PSR calculates a guideline range of 78 to 97 months'
        imprisonment .......................................................................................6

IV.     Crosby requests a downward variance to a time-served sentence..........8

V.      The United States requests a low-end guideline sentence...................11

VI.     The district court holds its first sentencing hearing and
        expresses its initial impression that a variance down to 5 days'
        imprisonment was not warranted.........................................................12

VII.    The district court varies downward drastically, imposing a
        sentence of five days or time served (whichever is less).....................16

SUMMARY OF THE ARGUMENT .................................................................19

ARGUMENT ...................................................................................................20

        Crosby's five-day, time-served sentence is substantively
        unreasonable for a recidivist child-pornography offender....................20

i

A.     Crosby's history and characteristics and the nature and circumstances of his offense do not justify such an extreme downward variance ........................................................ 23

      1.     *Crosby's history and characteristics do not warrant a time-served sentence* ............................................. 23

      2.     *The nature and circumstances of Crosby's offense are aggravating* .......................................................... 25

B.     The five-day sentence does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment ..................................................................... 26

C.     The sentence gives no weight to the need for general deterrence .......................................................................... 32

D.     The district court's analysis of incapacitation ignored Crosby's real-time recidivism ........................................... 33

E.     The district court's policy disagreement with the guideline range does not explain the extent of the variance ....... 34

F.     The district court erred by concluding that a variance was warranted by the need to avoid unwarranted sentencing disparities ...................................................................... 36

G.     The need to provide restitution to victims or to rehabilitate Crosby does not justify the variance ............................... 39

H.     *Cookson* held that an almost-identical sentence for child-pornography possession was substantively unreasonable .......... 41

CONCLUSION AND STATEMENT CONCERNING OAL ARGUMENT ..... 43

TYPE-VOLUME CERTIFICATION .................................................. 44

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION ...................... 45

## ATTACHMENTS

Attachment 1:   Transcript of July 13, 2023 sentencing hearing (Doc. 65)

Attachment 2:   Judgment in Case No. 1:20-cr-01766-DHU filed July 27, 2023 (Doc. 66)

Attachment 3:   Judgment in Case No. 1:22-cr-00864-DHU filed July 27, 2023 (Doc. 27)

# TABLE OF CASES AND OTHER AUTHORITIES

## TABLE OF CASES

<u>PAGE</u>

*Gall v. United States*,
    552 U.S. 38 (2007) ...................................................................... 22, 34

*Paroline v. United States*,
    572 U.S. 434 (2014) ........................................................................ 27

*Rita v. United States*,
    551 U.S. 338 (2007) .................................................................. 20, 22

*Tapia v. United States*,
    564 U.S. 319 (2011) ........................................................................ 30

*United States v. Benvie*,
    18 F.4th 665 (10th Cir. 2021) ........................................................ 31

*United States v. Bistline*,
    665 F.3d 758 (6th Cir. 2012) ......................................................... 30

*United States v. Booker*,
    63 F.4th 1254 (10th Cir. 2023) ...................................................... 31

*United States v. Camiscione*,
    591 F.3d 823 (6th Cir. 2010) ..................................... 24, 29, 37, 41

*United States v. Cooke*,
    635 F. App'x 524 (10th Cir. 2015) ................................................ 38

*United States v. Cookson*,
    922 F.3d 1079 (10th Cir. 2019) .................................. 23, 35, 41, 42

*United States v. Demma*,
    948 F.3d 722 (6th Cir. 2020) ......................................................... 41

*United States v. Dolehide*,
    663 F.3d 343 (8th Cir. 2011) ......................................................... 37

iv

*United States v. Friedman*,
   554 F.3d 1301 (10th Cir. 2009) ................................................................... 38

*United States v. Goff*,
   501 F.3d 250 (3d Cir. 2007) ...................................................................... 29

*United States v. Goldberg*,
   491 F.3d 668 (7th Cir. 2007) ..................................................................... 41

*United States v. Ilgen*,
   417 F. App'x 728 (10th Cir. 2011) ........................................................... 39

*United States v. Lychock*,
   578 F.3d 214 (3d Cir. 2009) ...................................................................... 41

*United States v. Mandli*,
   278 F. App'x 955 (11th Cir. 2008) ........................................................... 37

*United States v. Mandrell*,
   741 F. App'x 554 (10th Cir. 2018) ........................................................... 38

*United States v. McLaughlin*,
   760 F.3d 699 (7th Cir. 2014) ..................................................................... 37

*United States v. Morgan*,
   635 F. App'x 423 (10th Cir. 2015) ........................................................... 30

*United States v. Pinson*,
   542 F.3d 822 (10th Cir. 2008) ................................................................... 22

*United States v. Pugh*,
   515 F.3d 1179 (11th Cir. 2008) ................................................................. 41

*United States v. Ramey*,
   721 F. App'x 135 (3d Cir. 2018) .............................................................. 37

*United States v. Sample*,
   901 F.3d 1196 (10th Cir. 2018) ........................................................... 21, 40

*United States v. Smart*,
   518 F.3d 800 (10th Cir. 2008) ................................................................... 21

*United States v. Traufield*,
   768 F. App'x 802 (10th Cir. 2019) ........................................................... 38

*United States v. Walker,*
    844 F.3d 1253 (10th Cir. 2017) .................................................. 27, 28, 32, 33

*United States v. Zuk,*
    874 F.3d 398 (4th Cir. 2017) ................................................................. 37

## TABLE OF AUTHORITIES

### PAGE

### Statutes

18 U.S.C. § 2252(a)(4)(B) ........................................................................ 6

18 U.S.C. § 2252A(a)(5)(B) ...................................................................... 5

18 U.S.C. § 2252A(b)(2) ......................................................... 13, 26, 29

18 U.S.C. § 2256 ................................................................................ 5, 6

18 U.S.C. § 3231 .................................................................................... 1

18 U.S.C. § 3553(a) .....................................................................passim

18 U.S.C. § 3553(a)(1) ........................................................................ 25

18 U.S.C. § 3553(a)(2) ........................................... 20, 21, 27, 29, 30, 31

18 U.S.C. § 3553(a)(2)(A) ......................................................... 27, 31, 40

18 U.S.C. § 3553(a)(2)(B) ............................................................. 33, 40

18 U.S.C. § 3553(a)(2)(C) ............................................................. 33, 40

18 U.S.C. § 3553(a)(4) ........................................................................ 34

18 U.S.C. § 3553(a)(6) ........................................................................ 36

18 U.S.C. § 3553(a)(7) ........................................................................ 39

18 U.S.C. § 3583(c) ..................................................................... 30, 31

18 U.S.C. § 3742(b) ................................................................... 1

18 U.S.C. § 3771(a) ................................................................... 1

28 U.S.C. § 1291 ....................................................................... 1

<u>Rules</u>

Fed. R. App. P. 4(b)(1)(B)(i), (b)(4) ....................................... 1

Fed. R. Crim. P. 20 ............................................................ 6, 29

Tenth Cir. R. 11.3(C) ............................................................... 1

USSG § 2G2.2 ........................................................................... 7

USSG § 2G2.2. cmt. n.6(B)(ii) ................................................. 7

USSG § 2G2.2(a)(1) ............................................................... 35

USSG § 2G2.2(b)(2), (b)(4) ................................... 7, 9, 17, 35

USSG § 2G2.2(b)(6),(b)(7)(D) ............................... 7, 9, 17, 35

<u>Other Authorities</u>

United States Sentencing Commission, *Federal Sentencing of Child Pornography; Non-Production Offenses* (June 2021), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf........................................................................... 10

Dep't of the Air Force Instruction 36-3211, *Military Separations* (2022), *available at* https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-3211/dafi36-11.pdf. .................................4

## <u>PRIOR OR RELATED APPEALS</u>

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this criminal case under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b) to review the district court's final judgment imposing a sentence below the applicable guideline range. As required by 18 U.S.C. § 3742(b), the Solicitor General has personally approved prosecution of this appeal.

This appeal is timely. The district court entered judgment on July 27, 2023. 1Appx.102; 3Appx.16.[1] After receiving extensions of time until September 27, 2023, to file the notices of appeal, 1Appx.114, 3Appx.28, the United States timely filed its notices on September 26, 2023. 1Appx.115; 3Appx.29; *see* Fed. R. App. P. 4(b)(1)(B)(i), (b)(4).

## INTRODUCTION AND ISSUE PRESENTED FOR REVIEW

During the execution of a search warrant in 2018, agents uncovered child pornography on various devices in Defendant-Appellee Thomas Crosby's New Mexico home. In an interview that followed, Crosby admitted that he had been downloading child pornography since he was 16 years old. As a

---

[1] Citations to the appendix take the form [vol.]Appx.[page]. Volume II has been filed under seal because it contains materials that were filed under seal in the district court. These materials, which include the Presentence Investigation Report, a sealed sentencing memorandum, victim impact statements, and the statement of reasons, should remain under seal. *See* 18 U.S.C. § 3771(a); Tenth Cir. R. 11.3(C).

result of his offense, he was administratively discharged from the U.S. Air Force, after which he returned to his hometown in Pennsylvania. After a New Mexico grand jury indicted Crosby on one count of possession of child pornography based on the material found in his home, Crosby was arrested in Pennsylvania. A search of his new phone revealed a new collection of child pornography, including a video depicting the rape of a toddler. Based on the material discovered on his phone during his arrest, a grand jury in the Western District of Pennsylvania indicted Crosby on one count of possession of child pornography. After the Pennsylvania case was transferred to New Mexico, Crosby pleaded guilty to both indictments. Based largely on Crosby's recent autism diagnosis, his history of depression, and the district court's disagreement with certain guideline offense-level enhancements, the district court sentenced Crosby to a term of imprisonment of five days or time served (whichever was less) followed by a 15-year term of supervised release, and to pay $12,000 in restitution to his victims.

This appeal presents a single issue—was the district court's five-day, time-served sentence for a recidivist child-pornography offender substantively reasonable?

## STATEMENT OF THE CASE AND THE FACTS

I.    **Crosby is caught in New Mexico in possession of child pornography on his cell phone and on other devices.**

The investigation into Crosby began after PayPal flagged several accounts believed to be selling or purchasing child pornography. 2Appx.8 ¶ 22. Crosby's account was identified as a potential buyer. *Id.*; 1Appx.19 ¶ 7(b). Crosby's account used various IP addresses, several of which were found to be actively downloading child pornography on the BitTorrent network. 2Appx.8 ¶ 22. Dropbox also reported an upload of four videos of suspected child pornography from Crosby's account. 1Appx.19 ¶ 7(c).

On November 14, 2018, agents executed a search warrant at Crosby's home in Clovis, New Mexico, where he was on active duty with the U.S. Air Force and stationed at Canon Air Force Base. 2Appx.8 ¶ 23. Crosby's electronic devices were seized during the search. 1Appx.19 ¶ 7(e). Agents found child pornography images and videos on his phone and other electronic devices. 2Appx.8–9 ¶¶ 25–26. In total, forensic analysis found "over 4,000 files of minors, including prepubescent minors, engaged in sexually explicit conduct." 1Appx.20 ¶ 7(h); *see* 2Appx.10 ¶ 30. Further analysis revealed 46 videos and 291 images depicting previously-identified children engaging in sexually-explicit conduct. 1Appx.20 ¶ 7(h).

Crosby was not arrested at that time. After being advised of his rights, he agreed to speak to agents. 1Appx.19 ¶ 7(f). Crosby stated that he began downloading child pornography when he was approximately 16 years old. 2Appx.8 ¶ 24. He explained that he initially used an image board called 8ch.net to obtain child pornography, but switched to using Dropbox and KIK because he had content to sell, including "'bestiality, normal porn, or whatever someone was looking for.'" *Id.* Crosby also said he downloaded child pornography using peer-to-peer services including BitTorrent, as well as Hidden Wiki on the Tor dark-web network. *Id.* at 8 ¶¶ 23, 25. He stated that he preferred viewing images that involved children older than 15 years old and admitted to occasionally masturbating to videos of an "'older woman and a younger boy.'" *Id.* at 8–9 ¶ 25. He also admitted to viewing images of underage girls on a webcam, but denied ever asking these girls to do anything or ever touching a child. *Id.*

As a result of the child pornography uncovered during the execution of the search warrant, Crosby received an "other than honorable" discharge from the Air Force.[2] 2Appx.10 ¶ 30. Sometime after his discharge on June 4, 2019, he moved back to his hometown of Irwin, Pennsylvania. *Id.*

---

[2] An other-than-honorable discharge is an administrative separation based on "behavior . . . that constitutes a significant departure from the conduct expected of service members . . . ." *See* Dep't of the Air Force Instruction 36-

4

On September 23, 2020, a federal grand jury in New Mexico issued an indictment charging Crosby with one count of possession of visual depictions of prepubescent minors engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 2252A(a)(5)(B), (b)(2), and 2256. 1Appx.12–13.

## II.     <u>Crosby is arrested in Pennsylvania in possession of more child pornography.</u>

On October 16, 2020, Crosby was arrested on a federal arrest warrant stemming from the New Mexico charge at his workplace in Monroeville, Pennsylvania. 2Appx.9 ¶ 28. Crosby again waived his rights and agreed to speak with agents. *Id.* at 10 ¶ 28. He admitted that he never stopped viewing child pornography, even after law enforcement seized his devices containing child pornography in New Mexico and he was discharged from the Air Force. *Id.* In total, he had viewed child pornography for the last 10 years. *Id.* Crosby indicated that although he previously told law enforcement that he sold child pornography, his earlier statement was a lie. *Id.*

During Crosby's arrest, agents seized his cell phone. 2Appx.9 ¶ 28. A search of the phone uncovered 166 videos and 46 images of child pornography. *Id.* at 10 ¶ 29. As an example of the nature of the disturbing content, one 7-minute video was titled "3yo girl held in mom's lap while 9yo

---

3211, *Military Separations*, at 254 (2022), *available at* https://static.e-publishing.af.mil/production/1/af_a1/publication/dafi36-3211/dafi36-3211.pdf.

5

son and father f\*\*\* her." *Id.* True to its title, the video in fact depicted an approximately 3-year-old girl being vaginally penetrated by a 9-year-old boy and an adult man with their penises and by an adult woman with her finger. *Id.*

After his arrest, Crosby spent five days in custody pending a detention hearing, at which he was released. 2Appx.2. While on pretrial release, he was arrested for driving under the influence on November 20, 2022, with charges pending. *Id.* at 13.

Based on the images found on Crosby's phone during his arrest, a grand jury in the Western District of Pennsylvania issued an indictment, charging Crosby with one count of possession of visual depictions of prepubescent minors engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(4)(B), (b)(2) and 2256. *See* 3Appx.9–10. Jurisdiction over the Pennsylvania case was later transferred to the District of New Mexico under Fed. R. Crim. P. 20, and the two cases proceeded together. *See* 3Appx.8–12.

## III.  **The PSR calculates a guideline range of 78 to 97 months' imprisonment.**

After the transfer to the District of New Mexico, Crosby pleaded guilty to both indictments pursuant to a plea agreement in which the United States

agreed to recommend a term of imprisonment at the low end of the guideline range. 1Appx.29 ¶ 29(a), 33; 3Appx.14.

A presentence report (PSR) was prepared. The PSR grouped the two offenses and calculated a base offense level of 18. 2Appx.11 ¶ 37–38. The PSR added several offense-level enhancements under USSG § 2G2.2. 2Appx.11–12 ¶¶ 39–42. It applied a two-level enhancement under § 2G2.2(b)(2) for material involving a prepubescent minor. 2Appx.11 ¶ 39. It also added a four-level enhancement under § 2G2.2(b)(4) for material portraying sadistic or masochistic conduct or other depictions of violence or the sexual abuse of an infant or toddler. 2Appx.11 ¶ 40. Two additional levels were added under § 2G2.2(b)(6) because the offense involved the use of a computer. 2Appx.12 ¶ 41. Finally, an additional five levels were added under § 2G2.2(b)(7)(D) because the offense involved 600 or more images (each video counting as 75 images under the Guidelines). 2Appx.12 ¶ 42; *see* USSG § 2G2.2. cmt. n.6(B)(ii). After accounting for a three-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 28. 2Appx.12 ¶¶ 48–50. With Crosby's criminal history category of I, the resulting guideline range was 78 to 97 months' imprisonment. *Id.* at 20 ¶ 77.

IV. **Crosby requests a downward variance to a time-served sentence.**

Crosby raised no objection to the PSR. 1Appx.50. Instead, he argued for a downward variance to five days' imprisonment, which was the time he had already served during his brief pre-trial detention. 2Appx.30; *see id.* at 2. He also requested "a significant period of home confinement, and ten years of supervised release." *Id.* at 30.

To support his request for this dramatic variance, he relied heavily on an evaluation by Dr. Michelle Joy, diagnosing him with untreated autism spectrum disorder and documenting his history of depression. 2Appx.84. Despite not having Crosby's mental health treatment records or the PSR,[3] Dr. Joy provided several opinions regarding Crosby, his offense, and his risk of recidivism. According to Dr. Joy, "[i]ndividuals with autism are vulnerable to engaging in child pornography." *Id.* She explained that "[t]heir lack of social skills can lead to limited sexual intimacy and friendships," causing them to "turn[] to pornography for sexual activity."[4] *Id.* She described

---

[3] Dr. Joy requested, but did not receive, these documents. 2Appx.87. Her evaluation was based on a one-time, three-hour evaluation of Crosby, an interview with his mother, a family home video and photograph, and other documents from his criminal proceedings. *Id.*

[4] Dr. Joy indicated that "[p]roblematic sexual behavior is not uncommon in autism," including "deviant sexual fantasies and behaviors," but she did not explain why individuals with autism are particularly vulnerable to *child* pornography. 2Appx.84.

Crosby's risk of recidivism as low, noting that "[i]ndividuals who commit child pornography offenses are at lower risk for recidivism than other sex offenders" and that "[a]utistic individuals . . . are likely to follow the rules when set in place." *Id.* at 85. She attributed his continued viewing of child pornography after being caught in 2018 to untreated depression and predicted that "his future risk will be lowered with more mental health treatment." *Id.* She also indicated that individuals with autism are less likely to adapt to the prison environment and are at risk of victimization. *Id.* Dr. Joy found that Crosby's sexual engagement with child pornography was not representative of pedophilia, but an unspecified "deviant sexual interest" driving him to "aberrant pornography" with "increasingly intense subject matters." *Id.* Dr. Joy concluded that Crosby's "amenability to treatment, possibility of benefiting from specialized treatment, low risk of recidivism, and high vulnerability make him a good candidate for community-based treatment when the court decides he is able." *Id.*

Crosby also argued that the offense-level enhancements in USSG § 2G2.2(b)(2), (b)(4), (b)(6), and (b)(7)(D) did not accurately reflect the seriousness of his offense. 2Appx.38. He asserted that these enhancements "capture conduct that is almost universally part of child pornography offenses." *Id.* Relying on reports from the United States Sentencing

Commission, including a report issued in 2021,[5] he argued that the guideline provisions are "'insufficient to distinguish between offenders with different degrees of culpability.'" *Id.* (quoting 2021 USSC Report). He contended that the guideline provisions for child-pornography possession are largely the result of congressional mandates and are not supported by empirical evidence. *Id.* at 41–58.

Moving on to the § 3553(a) factors, Crosby argued that they all supported his proposed five-day sentence. 2Appx.58–72. As to his history and characteristics, he emphasized his service in the Air Force, where he excelled and received a variety of awards, and his continued employment and mental health treatment since his arrest. *Id.* at 33, 35. Focusing on the nature of his offense, he asserted that he engaged in no hands-on abuse, was more prone to view pornography due to his autism, and was unlikely to reoffend. *Id.* at 58–62. He contended that he would be justly punished for his offense through his registration as a sex offender and his discharge from the military, and any time spent in custody would be more difficult for him due to the nature of his child-pornography conviction and his autism. *Id.* at 62–65. Crosby asserted a

---

[5] United States Sentencing Commission, *Federal Sentencing of Child Pornography; Non-Production Offenses* (June 2021), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf ("2021 USSC Report").

prison sentence would not achieve general or specific deterrence and was
unnecessary for incapacitation. *Id.* at 65–70. He maintained that he would be
better served by receiving community-based treatment. *Id.* at 70. Finally, as
to sentencing disparities, he argued that a variance was necessary to avoid
unwarranted disparities created by the child-pornography guideline. *Id.* at
71–72.

## V.    **The United States requests a low-end guideline sentence.**

As agreed upon in the plea agreement, the United States requested a
low-end guideline sentence of 78 months' imprisonment, a 15-year term of
supervised release, and restitution to the victims. 1Appx.35, 41. Beginning
with the nature and circumstances of the offense, the United States
emphasized the seriousness of child-pornography offenses, which harm child
victims by disseminating images of their sexual abuse, invading their
privacy, and creating demand for such materials. *Id.* at 39. It noted that
Crosby's "conduct demonstrates a higher level of engagement than other
offenders" because the "evidence suggests he was purchasing, trading, and
possibly selling" child pornography online. *Id.* at 38–39. The United States
observed that Crosby possessed child pornography from the time he was 16
years old and continued to acquire and possess child pornography, even after
the execution of a search warrant at his home and his resulting discharge
from the Air Force. *Id.* at 39–40. It argued that this continued criminal

behavior raised concerns that Crosby will reoffend. *Id.* at 40. The United States contended that a 78-month sentence was necessary to "reflect the severity of the offense," "provide just punishment," "promote respect for the law," and "guard against unwarranted sentence disparities among similar situated defendants." *Id.* at 41.

In addition to its sentencing memo, the United States produced 75 pages of victim impact statements that the Probation Office provided to the district court for its review. 2Appx.11 ¶ 34. These statements explained in concrete, personal terms the devasting impacts that Crosby's victims continue to suffer as a result of having images of their sexual abuse circulated on the internet and possessed by Crosby and other offenders. *See id.* at 93–167.

## VI.    <u>The district court holds its first sentencing hearing and expresses its initial impression that a variance down to 5 days' imprisonment was not warranted.</u>

On May 9, 2023, the district court held an initial sentencing hearing at which the parties presented argument, Crosby allocuted, and the district court made initial observations regarding the appropriate sentence. *See* 1Appx.47–84.

In addressing the court, the United States emphasized the shocking nature of the content of the materials possessed by Crosby, including images of the abuse of toddlers. 1Appx.67–68. It also noted his use of peer-to-peer

software that made these images available for others to download and his involvement in a child pornography internet community. *Id.* at 68–69. The United States expressed concern regarding Crosby's "recidivism in realtime" in that after receiving serious consequences for possessing child pornography by having his collection and electronic devices seized and being discharged from the Air Force, Crosby reoffended by continuing to acquire and download child pornography on new devices. *Id.* at 69–71, 79. The United States pointed out these were all factors recognized by the 2021 USSC Report as aggravating factors.[6] *Id.* at 65–72. The United States highlighted the leniency Crosby had received first by not being prosecuted by the Air Force, and then again by allowing the transfer of his Pennsylvania case to New Mexico, which enabled him to avoid being subject to a 10-year mandatory minimum on his second case. *Id.* at 72; *see* 18 U.S.C. § 2252A(b)(2). Based on these factors, the United States argued that a 78-month sentence was sufficient but not greater than necessary. 1Appx.73.

For its part, the defense emphasized that since the initial discovery of Crosby's offense in 2018, Crosby had received an autism diagnosis and mental health treatment, and had continued to work full time. 1Appx.51–54. The defense pointed to the low risk of recidivism for child pornography

---

[6] The portion of the report referenced by the United States appears at page 2.

13

offenders in general and for Crosby in particular based on Dr. Joy's evaluation. *Id.* at 53–54. It observed that Congress's opinions about child-pornography punishments may have been limited based on what was known at that time and suggested that an appropriate guideline range would be the 6-to-12-month range that would have applied to Crosby under the original child-pornography guideline provisions in 1990. *Id.* at 57–58. Reiterating its arguments regarding the guideline enhancements, the defense again focused on how common it is for offenders to possess large numbers of images and share images, and emphasized that Crosby had no contact sex offenses. *Id.* at 75–76. In response to the United States' recidivism argument, the defense pointed out that there was no arrest between Crosby's discharge from the Air Force and the second time he was caught with child pornography. *Id.* at 77–79. And the defense relied on Dr. Joy's report explaining that his conduct in continuing to offend was related to his depression at the time. *Id.*

In allocuting, Crosby apologized for his conduct, explaining that he did not see "anything online as real" and did not know at the time how his actions hurt his victims. 1Appx.80. He also apologized to his family and thanked them for their support. *Id.*

Throughout the hearing, the district court shared its initial thoughts on the appropriate sentence for Crosby. The district court acknowledged Crosby's arguments regarding the lack of actual physical contact and the

14

criticism of Congress's sentencing position on child pornography. 1Appx.54–55. Yet it turned back to the fact that this is "a very serious offense" and that "somebody was abused terribly, horribly, in order to facilitate and allow others to view this kind of pornography online." *Id.* at 54–55; *see id.* at 62–63. The court pointed out that many offenders "don't see this as a serious offense or . . . as something that's gonna get them caught up in the federal system where they're going to have to actually have some real punishment at the end of the day." *Id.* at 55. The district court observed that Crosby did not have factors beyond the autism diagnosis that would support a variance, providing as examples his lack of abuse, childhood problems, or substance abuse. *Id.* The court described his circumstances as seeming "pretty much to be normal." *Id.* While the court expressed its appreciation for Dr. Joy's report, it stated, "I just don't see that it's going to warrant the kind of variance that you're asking for here." *Id.* at 56. The court also expressed concern for Crosby's recidivism given that he had repeatedly engaged with child pornography since he was 16 years old (at the time of sentencing, Crosby was 29). *Id.* at 63. Ultimately, the court decided to adjourn to allow it time to review the 2021 USSC Report and other material cited by the parties before announcing its sentence. *Id.* at 81–82.

15

## VII.  <u>The district court varies downward drastically, imposing a sentence of five days or time served (whichever is less).</u>

When the sentencing hearing reconvened two months later, the district court granted Crosby's request for a downward variance and sentenced him to 5 days' imprisonment or time served, whichever was less. 1Appx.92. The court began by adopting the PSR findings and calculating a guideline range of 78 to 97 months' imprisonment. *Id.* at 88–89. It noted that Crosby possessed images involving children under the age of 12. *Id.* at 89. It then concluded that each of the § 3553(a) factors (except for the guideline range and policy statements) supported a downward variance. *Id.*

The district court's discussion of the nature of Crosby's offenses was limited to its acknowledgment that they were "serious and concerning" and involved possession of "visual depictions of minors under the age of 12 engaged in sexually explicit conduct." 1Appx.89–90. Beyond those comments, the court focused almost entirely on Crosby's history and characteristics. It pointed out that Crosby had no prior convictions or history of child molestation. *Id.* at 89–90. The court discussed Dr. Joy's evaluation diagnosing him with untreated autism and depression. *Id.* at 90. It noted Dr. Joy's explanation that "[i]ndividuals with autism are vulnerable to engaging in child pornography." *Id.* It relied on Dr. Joy's findings that Crosby's crimes were "related to his diagnosis, his social deficits, and his restricted interests"

16

and that he did not suffer from pedophilia. *Id.* The court accepted Dr. Joy's assessment that Crosby had a low risk of recidivism, noting that child-pornography offenders "are lower risk for recidivism than other sex offenders" and "[a]utistic individuals, like Defendant, are likely to follow rules when set in place." *Id.* The court concluded by finding that Crosby's "amenability to treatment, possibility of benefiting from specialized treatment, low risk of recidivism, and high vulnerability in prison make him a good candidate for community-based treatment." *Id.*

The district court also recognized Crosby's employment, participation in mental health treatment, and successful compliance with the terms of his pretrial release. 1Appx.90–91. It acknowledged that Crosby had excelled in the military, receiving several awards, and that his other-than-honorable discharge disqualified him from benefits he would otherwise be eligible for through his service. *Id.* at 91. It further noted that to pay restitution to his victims, Crosby needed to be employed. *Id.* at 92.

Beyond Crosby's individual history and characteristics, the court noted that Crosby's offense level was "dramatically increased" by USSG § 2G2.2(b)(2), (b)(4), (b)(6) and (b)(7)(D), which it found "capture conduct that is part of the vast majority of child pornography possession offenses." 1Appx.91. The court relied on the 2021 USSC Report's finding that "these

17

enhancements were initially intended to target more serious and more culpable offenders." *Id.*

Addressing recidivism, the district court relied both on Dr. Joy's findings and "persuasive empirical research" cited by Crosby "that indicates more severe sentences do not reduce recidivism." 1Appx.91. The court found that the "overwhelming consensus" of the research is that "for these types of crimes," "treatment works; incarceration does not." *Id.*

Based on these findings, the district court sentenced Crosby to "a term of five days or time served, whichever is less." 1Appx.92. The court imposed a 15-year term of supervised release. *Id.* In addition to the standard sex offender conditions, the court required that Crosby "participate in and successfully complete location monitoring for a period of five years in the location monitoring program with the active global positioning satellite GPS technology, under the home detention component." *Id.* The court also required Crosby to participate in substance abuse and mental health treatment, as well as sex-offender treatment if recommended. *Id.* at 93–95. The court further prohibited Crosby from possessing sexually-explicit material or having contact with children and required monitoring of his internet-capable devices. *Id.* at 96–98. Finally, the court ordered him to pay $12,000 in restitution to his victims. *Id.* at 98. The court reiterated its findings in a written statement of reasons. 2Appx.88–92.

The district court entered judgment on July 27, 2023. 1Appx.102; 3Appx.16. The United States timely appealed. 1Appx.115; 3Appx.29.

## SUMMARY OF THE ARGUMENT

The district court's extreme downward variance from a guideline range of 78 to 97 months' imprisonment to a sentence of five-days, time-served for two child-pornography-possession cases was manifestly unreasonable. Contrary to the district court's findings, the sentencing factors set forth in 18 U.S.C. § 3553(a) cannot justify a downward variance of the magnitude imposed by the district court. Crosby possessed a large volume of deeply disturbing images of child sexual abuse involving children as young as toddlers. He did so continuously for a decade and reoffended even after he was caught by law enforcement and discharged from the Air Force.

In the face of these aggravating factors, the district court's excessive reliance on Crosby's recent autism diagnosis, its relationship to his offenses, his need for treatment, and his vulnerability in prison cannot justify the downward variance. Nor can the district court's disagreement with the Guidelines' offense-level enhancements explain a variance down to a nominal sentence, given that Crosby's guideline range even without these enhancements would have been much higher than the sentence he received. His time-served sentence fails to account for the seriousness of Crosby's offense conduct and ignores the need for retribution, general deterrence, and

incapacitation. In other words, it is simply too short to meet the sentencing objectives that every sentence *must* achieve under § 3553(a)(2). In addition, it creates unwarranted sentencing disparities among similar-situated defendants. While a district court is entitled to substantial discretion in matters of sentencing, the court's choice of sentence here exceeds the wide bounds of permissible choice.

## **ARGUMENT**

### **Crosby's five-day, time-served sentence is substantively unreasonable for a recidivist child-pornography offender.**

By statute, a sentencing court must consider each of the factors in 18 U.S.C. § 3553(a), to determine the particular sentence to be imposed. *See Rita v. United States*, 551 U.S. 338, 347–48 (2007); These factors are—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for a sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

(4) [the Guidelines' sentencing range];

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C § 3553(a). While each of the § 3553(a) factors must be "consider[ed]," the statute places particular emphasis on the factors in § 3553(a)(2), requiring that the sentence be "sufficient, but not greater than necessary" to deliver adequate punishment, deterrence, incapacitation, and rehabilitation. *See id.* These factors are therefore "of particular importance," *United States v. Smart*, 518 F.3d 800, 810 (10th Cir. 2008), and a sentence that is not "sufficient" to achieve these specific objectives is not a sentence in compliance with § 3553(a)'s mandate.

This Court reviews the district court's sentence for substantive reasonableness, considering "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Sample*, 901 F.3d 1196, 1199 (10th Cir. 2018) (quotation omitted). The Court reviews for an abuse of discretion, asking whether the sentence is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* While this review is deferential, "appellate review continues to have an important role to play and must not be regarded

21

as a rubber stamp." *United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008). As the Supreme Court has observed, "[i]n sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur." *Rita*, 551 U.S. at 354.

This is one of those times. The district court misevaluated the § 3553(a) factors when it imposed a five-day, time-served sentence. A major variance "should be supported by a more significant justification than a minor one." *Gall v. United States*, 552 U.S. 38, 50 (2007). But there is nothing about Crosby's case that would justify a variance of the magnitude imposed by the district court. Crosby possessed a large number of images and videos depicting horrendous forms of child sexual abuse, including the rape of a toddler. Yet even after he was caught, he continued to download child pornography undeterred, as he had for the last decade.

In analyzing the § 3553(a) factors, the district court gave no weight to these aggravating factors, but instead focused single-mindedly on Crosby's newly-diagnosed autism-spectrum disorder, his depression, and his amenability to treatment. The district court placed undue weight on Dr. Joy's predictions and explanations without meaningfully grappling with Crosby's actual conduct and history. The over-emphasis on Crosby's diagnosis crowded out the need for his sentence to reflect the seriousness of his offense, promote

respect for the law, provide just punishment, promote general deterrence, provide for incapacitation, and avoid unwarranted sentencing disparities. The district court's "excessive reliance" on Crosby's recent diagnosis at the expense of all the other sentencing factors resulted in a substantively-unreasonable sentence that does not meet the purposes of § 3553(a). *United States v. Cookson*, 922 F.3d 1079, 1093 (10th Cir. 2019).

### A. Crosby's history and characteristics and the nature and circumstances of his offense do not justify such an extreme downward variance.

#### 1. *Crosby's history and characteristics do not warrant a time-served sentence.*

The district court's reliance on Crosby's lack of criminal history ignores that, by his own admission, Crosby has been engaged in criminal activity for the last decade. *See* 1Appx.89–90. At the time of his arrest, Crosby admitted that he had possessed and viewed child pornography *for ten years* before his arrest, since the time he was 16 years old. 2Appx.8 ¶ 24, 10 ¶ 28. The court also ignored that Crosby was convicted of possessing child pornography in not *one*, but *two* cases. His offenses were hardly an aberration in an otherwise law-abiding life; Crosby simply had never been caught before.

Nor does the district court's reliance on Crosby's lack of a history of child molestation warrant leniency. 1Appx.90. The fact that Crosby has not committed additional, uncharged crimes does not diminish his culpability for

23

the possession crimes that he did in fact commit. *See United States v. Camiscione*, 591 F.3d 823, 834 (6th Cir. 2010) (concluding that "it is not logical to justify a more lenient sentence" for possession of child pornography "on the basis that [the defendant] did not make or distribute child pornography or molest a child").

Neither can the relationship between Crosby's newly-diagnosed autism and "social deficits" and his offense cannot justify the degree of the variance. 1Appx.90. While attributing his crimes to his autism, the district court ignored evidence that Crosby's mental health conditions were not so severe that they precluded him from serving with distinction in the Air Force. The court's reliance on Crosby's autism to explain his child-pornography offense was at odds with its findings that Crosby "excelled in the military," where he received "the Wartime Service Award, Airman of the Quarter, and Outstanding Airman of the Year." *Id.* at 91. Clearly, Crosby's autism was not so debilitating that he was unable to exercise self-control and follow rules in his rigid, military profession. The court's focus on "his social deficits" also contrasts with Crosby's description of his social successes in the Air Force, where "he got along better with his fellow service members," who were like "family." 2Appx.33, 79. The district court focused heavily on Dr. Joy's evaluation to mitigate Crosby's culpability, without reconciling evidence demonstrating that Crosby was succeeding both professionally and socially at

the time of his offense (and had continued to maintain full-time employment throughout his criminal proceedings). 1Appx.90–91. Moreover, the arbitrariness of the district court's emphasis on Dr. Joy's evaluation to the exclusion of other record evidence is made even more apparent by the district court's original assessment that Dr. Joy's report would not warrant the kind of extreme variance requested by Crosby. *Id.* at 56.

> 2. *The nature and circumstances of Crosby's offense are aggravating.*

In contrast to the emphasis on Crosby's history and characteristics, the district court gave short shrift to the nature and circumstances of Crosby's offense. 18 U.S.C. § 3553(a)(1). Crosby possessed an expansive array of deeply disturbing images, including images depicting the rape of a toddler. 2Appx.8–9 ¶¶ 25–26, 10 ¶ 29–30; 1Appx.7 ¶ 7(h), (k). He used Hidden Wiki/TOR on the dark web to obtain child sexual assault materials, and his financial transactions associated with the receipt of child pornography showed a greater-than-average level of involvement with child pornography. PSR 8–9 ¶ 22–26. Crosby shared these images with others via a peer-to-peer network. PSR 8 ¶ 23.

Crosby's possession of child pornography was not an isolated incident. He downloaded child pornography for *years* before he got caught. 2Appx.8 ¶ 24, 10 ¶ 28. Yet, after having his collections seized by law enforcement in

2018 and receiving an other-than-honorable discharge from the Air Force in 2019, Crosby was not deterred. *See* 1Appx.19–20 ¶¶ 7(e), (i); 2Appx.10 ¶ 30. Instead, he continued to download *even more* child pornography on a new device during the two years between his initial contact with law enforcement and his ultimate arrest in 2020. 1Appx.20 ¶¶ 7(j), (k); 2Appx.10 ¶ 28. As a result of Crosby's recidivism, he was charged in two separate cases. But for the United States' agreement to transfer the Pennsylvania case to New Mexico, those cases would have proceeded separately, and Crosby would have been a repeat offender subject to a mandatory minimum of ten years in his second case. *See* 18 U.S.C. § 2252A(b)(2). In light of these aggravating circumstances, the district court gave insufficient weight to the specifics of Crosby's offenses.

### B.   The five-day sentence does not reflect the seriousness of the offense, promote respect for the law, or provide just punishment.

At the initial sentencing hearing, the district court unambiguously described Crosby's offense as "a very serious offense." 1Appx.55. The court explained that "somewhere down the lines" "some child was horribly abused in a way that's going to affect them forever." *Id.* at 62–63. By possessing these materials, the court found that Crosby "supported [the abuse] and in some ways encouraged it by engaging in this." *Id.* at 63; *see also id.* at 55–56. The court further acknowledged that the guideline range "in some ways

promotes respect for the law" because "many people, for whatever reason, especially offenders in this the type of crime, don't see this as a serious offense or don't see this as something that's gonna get them caught up in the federal system where they're going to have to actually have some real punishment at the end of the day. And so that concerns me." *Id.* at 55. And again in the second sentencing hearing, the court reiterated that Crosby's crime was "serious and concerning." *Id.* at 90.

Yet despite these acknowledgements, the district court somehow arrived at the conclusion that the retributive purposes of § 3553(a)(2)(A) actually *warranted* a downward variance. 1Appx.89. This conclusion was simply wrong. "[T]he length of the sentence should reflect the harm done and the gravity of the defendant's conduct." *United States v. Walker*, 844 F.3d 1253, 1257 (10th Cir. 2017) (quotation omitted). Crosby's possession of child pornography required the depraved and horrific abuse of small children. His possession of these images and making them available to others via a peer-to-peer network amplified the harm to the child victims by memorializing the abuse, violating the child's privacy, and making the images publicly available for the sexual gratification of untold numbers of strangers on the internet. *See Paroline v. United States*, 572 U.S. 434, 457 (2014) ("[The child] victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the

future view images of the sexual abuse she endured. . . . In a sense, every

viewing of child pornography is a repetition of the victim's abuse."). The

victim impact statements from Crosby's own victims documented the

devastating, life-altering harm inflicted on them. 2Appx.93–167. Crosby's

nominal sentence trivializes this.

Likewise, Crosby's sentence does not promote respect for the law. The

district court remarked on the perception held by child-pornography

offenders that their offenses are not serious and will not result in serious

punishment. 1Appx.55. Crosby's sentence does not correct this misperception;

it confirms it. Moreover, Crosby's five-day sentence is inadequate to address

Crosby's disrespect for the law by continuing to download child pornography

even after he was caught the first time. It conveys that even multiple

convictions for possessing child pornography do not lead to time in prison.

Nor is a five-day sentence just punishment for Crosby's crime. His

sentence of imprisonment is a product of happenstance (the length of time he

waited in custody for his Pennsylvania detention hearing), not reasoned

judgment. 1Appx.50. This limited pretrial detention does not constitute

punishment. *See Walker*, 844 F.3d at 1257 (33 days in pretrial detention was

not punishment where the defendant "had requested postponement of his

detention hearing and confinement was statutorily required prior to the

hearing"). It was simply the shortest term of imprisonment that the district court could impose.

Congress has expressed its intent that child-pornography offenses "be treated severely." *United States v. Goff*, 501 F.3d 250, 258 n.13 (3d Cir. 2007). This is reflected in the 10-year mandatory minimum that would have applied to Crosby but for his transfer under Fed. R. Crim. P. 20. *See* 18 U.S.C. § 2252A(b)(2). To be sure, the government agreed to forego this mandatory minimum when Crosby's cases were consolidated in New Mexico, but Congress's assessment of the appropriate penalty for a recidivist child-pornography possessor still puts in sharp contrast the woeful inadequacy of the punishment the district court imposed. *See Camiscione*, 591 F.3d at 836 (finding that mandatory minimum enacted after defendant's offense and thus not applicable to him was nonetheless "powerful persuasive authority in assessing the reasonableness" of defendant's sentence).

Any collateral consequences that flow from Crosby's convictions cannot replace the need for his criminal sentence to serve the purpose of retribution. Section 3553(a)(2) requires that "*the sentence imposed*" "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment." (emphasis added). Collateral consequences such as Crosby's discharge from the military (and the benefits he lost as a consequence of his

offense[7]), the requirement that he register as a sex offender, and any implications for his social or economic life are not part of his sentence. *See United States v. Morgan*, 635 F. App'x 423, 444–46 (10th Cir. 2015) (discussing favorably *United States v. Bistline*, 665 F.3d 758, 765–66 (6th Cir. 2012) (holding that the district court's recitation of the collateral consequences of the defendant's conviction, such as registering as a sex offender and the resulting loss of reputation in the community, does not show that his sentence reflects the seriousness of his offense for purposes of substantive reasonableness)). The district court's reference to Crosby's discharge cannot show that his *sentence* meets the need for retribution. *See* 1Appx.91. Moreover, his administrative discharge cannot logically serve as punishment for his second offense, which occurred only after he was already administratively discharged.

His term of supervised release and the conditions imposed likewise cannot serve the retributive goals of § 3553(a)(2). A sentencing court is prohibited from considering retribution when imposing a term or condition of supervised release under 18 U.S.C. § 3583(c). *See Tapia v. United States*, 564 U.S. 319, 326 (2011) ("[A] court may not take account of retribution (the first

---

[7] Servicemembers *earn* these benefits by completing a term of honorable service, which Crosby did not do; it is not as if his vested benefits were stripped from him.

purpose listed in § 3553(a)(2)) when imposing a term of supervised release.");

*United States v. Benvie,* 18 F.4th 665, 671 (10th Cir. 2021) ("[R]etributive considerations may not be reasons for a special condition of supervised release."); *see also United States v. Booker*, 63 F.4th 1254, 1259–61 (10th Cir. 2023) (holding that the district court erred when it considered § 3553(a)(2)(A) in revoking a term of supervised release). The district court did not suggest that its 15-year term of supervised release or any of its special conditions served retributive purposes. *See* 1Appx.92 (stating that location monitoring was imposed "based on the nature and circumstances of the instant offense and the need to provide the Defendant with additional structure to deter any potential criminal conduct."). To the extent Crosby may argue otherwise, the prohibition in § 3583(c) makes clear that Crosby's supervised release, no matter how lengthy or restrictive, cannot fill the gap in retribution left by the district court's nominal term of imprisonment.

Nor did the district court give any indication that it imposed restitution as retribution for Crosby's crime. On the contrary, Crosby's restitution was keyed to the victim's losses, not the culpability of his actions. *See* 1Appx.98 (imposing restitution of $2,000 for each of the six identified victims but limiting restitution to "the amount of the victim's loss").

In the end, all that is left to meet the need for the sentence to reflect the seriousness of the offense, promote respect for the law, or provide just

punishment for Crosby's two child-pornography offenses is a five-day stint in pretrial detention. That is wholly insufficient given the nature of the crime and Crosby's repeated disregard for the law.

### C. The sentence gives no weight to the need for general deterrence.

The district court erred by concluding that the five-day sentence promoted general deterrence. *See* 1Appx.89; 2Appx.90. "General deterrence is one of the key purposes of sentencing." *Walker*, 844 F.3d at 1257 (quotation and alteration omitted). The importance of general deterrence is magnified where, as here, the variance is substantial. *Id*. Contrary to the district court's finding, the nominal sentence imposed does nothing to promote general deterrence. Instead, it conveys that even if a defendant is caught with child pornography not once, but twice, a defendant may still obtain a light sentence. It all but assures would-be offenders that even if they are discovered, they may not suffer consequences severe enough to outweigh the perceived benefits of accessing illicit materials.

The district court's generalization that "treatment works; incarceration does not" cannot negate the importance of general deterrence. 1Appx.91. To start, this comment appears directed more to reducing recidivism, or specific deterrence. *See id*. Its treatment/incarceration dichotomy has no application to an individual who had not already offended. And even if this comment

could be read more broadly to encompass general deterrence, this Court has emphasized that § 3553(a)(2)(B) requires a district court to put aside any general skepticism on the effectiveness of imprisonment in deterring crime by others. *Walker*, 844 F.3d at 1258 (finding the district court gave inadequate attention to general deterrence when it said it didn't put "much stock in the fact that others are deterred by the fact that you're sent to prison for a long time"). Congress has deemed general deterrence a necessary sentencing consideration; the district court was not free to simply disregard this requirement.

Despite initially recognizing the harmful consequence a light sentence would have on the goal of generally deterring the possession of child pornography, the district court's sentence here conveys the exact message that initially troubled it—that "at the end of the day," there being no guarantee of any "real punishment" for child pornography offenses. 1Appx.55. The five-day, time-served sentence does not serve the purpose of general deterrence.

### D. The district court's analysis of incapacitation ignored Crosby's real-time recidivism.

Next, it was unreasonable for the district court to conclude that the time-served sentence was supported by the need to protect the public from future crimes by Crosby, § 3553(a)(2)(C). Despite initially recognizing that

Crosby's ten-year history of child-pornography possession raised recidivism concerns, 1Appx.63, these concerns factored not at all into the court's ultimate assessment of the need for incapacitation. The court found Crosby's risk of recidivism low, relying on an overall low risk of recidivism among those who commit child pornography offenses and the tendency for individuals with autism to follow rules "when set in place." *Id.* at 90. But these generalized considerations fail to account for Crosby's own real-time recidivism. If the nationwide criminalization of child pornography had not already "set the rules in place" for Crosby, his discharge from the Air Force should certainly have done so. Yet he was again found with similar materials on a new device. 2Appx.10 ¶ 29. It was manifestly unreasonable for the district court to rest on a hypothesized tendency to follow rules in the face of Crosby's demonstrated disregard of them.

### E. The district court's policy disagreement with the guideline range does not explain the extent of the variance.

The sentencing guidelines provide the "starting point and the initial benchmark" for an appropriate sentence. *Gall*, 552 U.S. at 49. Crosby's guideline range was 78 to 97 months. His five-day sentence was only one fifth of one percent of the bottom of the guideline range. The guideline range, which must be considered under § 3553(a)(4), in and of itself weighs against a time-served sentence.

34

The district court rejected this guideline range in part based on a policy disagreement with the offense-level enhancements under USSG 2G2.2.(b)(2), (b)(4), (b)(6), and (b)(7)(D). 1Appx.91. The district court relied on the 2021 USSC Report for the proposition that "these enhancements were initially intended to target more serious and more culpable offenders." *Id.* But the court found that as applied today, the "enhancements capture conduct that is part of the vast majority of child pornography possession offenses." *Id.*

As this Court has recognized, a "policy disagreement with § 2G2.2 could support the imposition of a more lenient sentence." *Cookson*, 922 F.3d at 1093. But the district court's criticism of the offense-level enhancements does not explain a variance of the degree granted by the district court. Even without these enhancements, Crosby's offense level would have been 15 (a base offense level of 18 minus 3 levels for acceptance of responsibility). USSG § 2G2.2(a)(1). With a criminal history category of I, his guideline range would have been 18 to 24 months. Yet the district court's five-day sentence went far below this hypothetical guideline range. The district court offered no reason to disagree with the Guidelines' base-offense level or conclude that child pornography offenses generally warrant only nominal punishment. On the contrary, at the initial sentencing hearing, the district court stated, "I don't think Congress had it entirely wrong with regard to the sentencing guidelines that they impose because I think it does reflect the seriousness of it, in some

ways promotes respect for the law." 1Appx.55. The court's policy disagreement cannot justify the variance imposed.

And even if the district court's disagreement with the guideline enhancements was reasonable, it was not free to disregard the aspects of the § 3553(a) factors that those enhancements reflect. The enhancements were designed to incrementally increase punishment based on the seriousness of the offense. In Crosby's case, most of these enhancements applied because he possessed a high volume of images depicting the sexual abuse of young children, including toddlers. Regardless of the court's disagreement with the guideline enhancements, these offense characteristics remain relevant to assessing the seriousness of the offense, which the district court was statutorily obligated to do. As discussed more fully in sections A.2 and B, the five-day sentence in no way captures the nature and circumstances of Crosby's offense or the seriousness of his conduct.

**F.    The district court erred by concluding that a variance was warranted by the need to avoid unwarranted sentencing disparities.**

The district court incorrectly concluded that the need to avoid unwarranted sentencing disparities weighed in favor of a downward variance. 1Appx.89; 2Appx.90; 18 U. S. C. § 3553(a)(6). Setting aside a guideline range of 78 to 97 months in favor a 5-day sentence *creates*

36

sentencing disparities; it does not avoid them. The district court's conclusion to the contrary is arbitrary.

When compared to other child-pornography offenders, there is nothing so exceptional about Crosby's circumstances that would warrant such an extreme deviation from the guideline range. On the contrary, many of the factors relied on by the district court are common among child-pornography offenders. Most are vulnerable in prison.[8] *See* 1Appx.90. Most have psychological issues that underlie their socially-aberrant behavior.[9] *Id.* Even if it is true that Crosby is unlikely to reoffend (again) now that he is receiving

---

[8] *See United States v. McLaughlin*, 760 F.3d 699, 707 (7th Cir. 2014) (describing argument that defendant would be more vulnerable in prison as "a generic challenge that would apply to every defendant convicted of a crime involving child pornography"); *Camiscione*, 591 F.3d at 835 (finding vulnerability of a child-pornography defendant in prison was "an improper sentencing consideration").

[9] *See United States v. Zuk*, 874 F.3d 398, 411 (4th Cir. 2017) (26-month, time-served sentence too short notwithstanding autism diagnosis); *United States v. Dolehide*, 663 F.3d 343, 349 (8th Cir. 2011) (no variance warranted where defendant had Asperger's Syndrome and asserted that he would likely be a victim in prison); *Camiscione*, 591 F.3d at 824–25 (1-day sentence unreasonably short where defendant suffered from a number of mental health conditions including depression, anxiety, borderline personality disorder, and attention deficit hyperactivity disorder); *United States v. Ramey*, 721 F. App'x 135, 139 (3d Cir. 2018) (30-day sentence for possession of child pornography unreasonably short notwithstanding defendant's learning disability); *c.f. United States v. Mandli*, 278 F. App'x 955, 956 (11th Cir. 2008) (guideline sentence of 78 months for child-pornography possession substantively reasonable despite defendant's Asperger's Syndrome and vulnerability in prison).

treatment, that is not unusual given the generally low recidivism rates among child pornography offenders that the district court noted. *Id.* There is nothing to meaningfully differentiate Crosby from others who have been convicted of child pornography possession. *See id.* at 55 (discussion by district court noting that Crosby's circumstances "seem[] pretty much to be normal"). Absent a finding that child-pornography offenders, as a whole, deserve dramatic downward variances (which the district court did not make), Crosby's history and circumstances are not so exceptional to warrant a sentence vastly lower than that received by most defendants in his circumstances. *See United States v. Friedman*, 554 F.3d 1301, 1308–09 (10th Cir. 2009) (downward variance was substantively unreasonable where "the record reveals nothing to distinguish [the defendant] in any way from the run-of-the-mill" offender).

The disparity between Crosby's sentence and those of similarly-situated defendants is apparent from the child-pornography possession sentences that this Court has affirmed. *See, e.g., United States v. Traufield*, 768 F. App'x 802, 804, 807, 809–10 (10th Cir. 2019) (affirming a sentence of 108 months for one count of child-pornography possession where the offense level was 29 and criminal history category III); *United States v. Mandrell*, 741 F. App'x 554, 555, 558 (10th Cir. 2018) (affirming a bottom-of-the-guideline-range sentence of 97 months for one count of possession of child pornography as

substantively reasonable); *United States v. Cooke*, 635 F. App'x 524, 524–25, 527 (10th Cir. 2015) (affirming 97-month sentence for one count of child-pornography possession where defendant's offense level was 30 and his criminal history category I); *United States v. Ilgen*, 417 F. App'x 728, 729, 730, 732 (10th Cir. 2011) (affirming a 78-month sentence for one count of child-pornography possession for a defendant with an offense level of 28, a criminal history category I, and documented psychological conditions). While each sentence must be decided on its own individual circumstances, nothing about Crosby's history and characteristics warrant a sentence so far below those received by other defendants convicted of similar conduct. And the nature and circumstances of Crosby's offense are not less culpable than the average offender, considering the volume and types of images he possessed and his continued downloading of child pornography even after law enforcement seized his collection. Contrary to the district court's finding, this factor does not support a variance.

### G.    The need to provide restitution to victims or to rehabilitate Crosby does not justify the variance.

As to restitution, the district court found that Crosby needed to be employed to pay restitution. 1Appx.92. That is, of course, true. But while restitution is a required consideration under § 3553(a)(7), it cannot replace Congress's overarching direction that a sentence must be "sufficient, but not

greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," which includes retribution, general deterrence, incapacitation, and rehabilitation. Because the nominal sentence here fails to meet the sentencing purposes of § 3553(a)(2)(A)–(C), restitution cannot justify the downward variance. *See Sample*, 901 F.3d at 1200 (finding district court's reliance on restitution "as overriding all other sentencing considerations exceeded the bounds of permissible choice").

Likewise, the district court relied excessively on Crosby's rehabilitative needs. The court simply concluded he was "a good candidate for community-based treatment." 1Appx.90. It never found that Crosby could not access treatment in prison.[10] Even assuming community-based treatment could prove more effective for Crosby, this does not outweigh the need for retribution, deterrence, and incapacitation, and to avoid unwarranted sentencing disparities. The § 3553(a) factors, considered cumulatively, do not justify the extent of the district court's variance from the guideline range.

---

[10] While Dr. Joy found that Crosby could benefit from unconventional treatment focusing on learning social skills and that forensic settings have "few clinicians with expertise in ASD-specialized treatment," she also suggested that "even a common antidepressant" could "simultaneously address depression, obsession, and sexual drive." 2Appx.85.

### H. *Cookson* held that an almost-identical sentence for child-pornography possession was substantively unreasonable.

Crosby's sentence bears a remarkable resemblance to the sentence in

*United States v. Cookson*, 922 F.3d at 1082. In *Cookson*, this Court held a

probationary sentence for possession of child pornography substantively

unreasonable.[11] *Id*. There, the defendant faced a guideline range of 97 to 121

months for two counts of possession of child pornography, but the district

court sentenced him to just five years' probation. *Id*. at 1082. This Court held

that sentence substantively unreasonable because it focused heavily on the

defendant's history and characteristics (specifically his recovery from drug

addiction, job success, and family support), but failed to address deterrence,

---

[11] Like *Cookson*, other circuit courts have repeatedly rejected sentences of no or little imprisonment in child-pornography possession cases as substantively unreasonable. *See United States v. Demma,* 948 F.3d 722, 725–26, 733 (6th Cir. 2020) (1-day sentence, 10 years' supervised released, and restitution totaling $45,000 substantively unreasonable, where guidelines range was 78 to 97 months' imprisonment, notwithstanding psychologists' opinion attributing the defendant's possession of child pornography to his military service and PTSD); *Camiscione*, 591 F.3d at 824–25 (sentence of 1 day's imprisonment, 3 years' supervised release, and 180 hours' community service substantively unreasonable, where guidelines range was 27 to 33 months' imprisonment); *United States v. Lychock*, 578 F.3d 214, 216, 220–21 (3d Cir. 2009) (sentence of 5 years' probation and $10,000 fine substantively unreasonable, where guideline range was 30 to 37 months' imprisonment); *United States v. Pugh*, 515 F.3d 1179, 1182 (11th Cir. 2008) (sentence of 5 years' probation substantively unreasonable where guideline range was 97 to 120 months' imprisonment); *United States v. Goldberg*, 491 F.3d 668, 669–70, 674 (7th Cir. 2007) (sentence of 1 day's imprisonment and 10 years' supervised release substantively unreasonable, where guideline range was 63 to 78 months' imprisonment).

rehabilitation, incapacitation, or sentencing disparities. *Id.* at 1092–94. In addition, this Court held that the district court's policy disagreement with the same child-pornography sentencing enhancements at issue in Crosby's case did not justify the variance where the district court "did not elaborate on this policy disagreement" or "address the extent to which the disagreement weighed in its final decision." *Id.* at 1093. Due to the "nearly exclusive focus" on the defendant's rehabilitation (as well as a misunderstanding by the district court regarding Cookson's plea agreement), this Court held that the probationary sentence was substantively unreasonable. *Id.* at 1095. While *Cookson* did not "foreclose the possibility that a more detailed explanation . . . could yield a similar, but substantively reasonable, sentence on remand," it vacated and remanded for resentencing. *Id.* at 1096.

Like in *Cookson*, the district court here erred by focusing nearly exclusively on Crosby's history and characteristics. But unlike in *Cookson*, the problems with Crosby's sentence cannot be cured by a more fulsome explanation. The district court misevaluated the § 3553(a) factors by finding that they supported a downward variance, 1Appx.89, when in fact the nature and circumstances of the offense, retribution, deterrence, incapacitation, and sentencing disparities weigh heavily in favor of a meaningful custodial sentence. No explanation could justify a sentence so low for an unexceptional recidivist offender like Crosby. No reasonable court could find that Crosby's

time-served sentence is sufficient to comply with the purposes of sentencing

in § 3553(a). It exceeds the bounds of permissible choices and should be

vacated.

## CONCLUSION AND STATEMENT CONCERNING ORAL ARGUMENT

Five days of pretrial detention is an unreasonably short sentence for

two child-pornography convictions in separate cases. This Court should hold

the sentence substantively unreasonable, vacate the sentence, and remand

for resentencing.

Oral argument is requested to address any issues not fully resolved in

the parties' briefs.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*s/ Tiffany L. Walters*

TIFFANY L. WALTERS
Assistant U.S. Attorney
P. O. Box 607
Albuquerque, NM 87103
(505) 346-7274
Tiffany.Walters2@usdoj.gov

## <u>TYPE-VOLUME CERTIFICATION</u>

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief contains 9,679 words. I relied on my word processor to obtain the count. My word processing software is Word 2016.

*s/ Tiffany L. Walters*
TIFFANY L. WALTERS
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION</u>

I HEREBY CERTIFY that the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on December 20, 2023, and that seven photocopies of the foregoing brief will be sent by Federal Express to the United States Court of Appeals for the Tenth Circuit, Office of the Clerk, located at the Byron White United States Courthouse, 1823 Stout Street, Denver, Colorado, 80257, following notification that the electronic brief is compliant.

I ALSO CERTIFY that Hans P. Erickson, attorney for Defendant-Appellee Thomas Crosby, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system.

*s/ Tiffany L. Walters*
TIFFANY L. WALTERS
Assistant United States Attorney

```
1              IN THE UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF NEW MEXICO

3    _____
                                    )
4    UNITED STATES OF AMERICA,      )     Case No. 1:20-CR-01766-001-DHU
              Plaintiff,            )     Case No. 1:22-CR-00864-001-DHU
5                                   )
        vs.                         )     Mimbres Courtroom
6                                   )     Albuquerque, New Mexico
     THOMAS CROSBY,                 )
7              Defendant.           )     July 13, 2023
     _____)     11:23 a.m.
8

9                      TRANSCRIPT OF PROCEEDINGS
                      SENTENCING HEARING (cont.)
10             BEFORE THE HONORABLE DAVID HERRERA URIAS
                 UNITED STATES DISTRICT COURT JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:   NICHOLAS MOTE, ESQ.
13                        Assistant United States Attorney
                          District of New Mexico
14                        P.O. Box 607
                          Albuquerque, New Mexico  87103
15
     For the Defendant:   HANS ERICKSON, ESQ.
16                        Assistant Federal Public Defender
                          111 Lomas Blvd., NW, Suite 501
17                        Albuquerque, New Mexico  87102

18

19

20

21   REPORTED BY:         CARMELA V. MCALISTER, CRR, RPR, NM CCR 308
                          United States Court Reporter
22                        333 Lomas Blvd., NW
                          Albuquerque, New Mexico  87102
23                        Phone:  505-348-2094
                          Email:  Carmela_McAlister@nmd.uscourts.gov
24
         Proceedings recorded by mechanical stenography; transcript
25   produced by computer.
```

1 | TABLE OF CONTENTS

2 | Court in Session                                    3

3 | Court's Ruling                                      4

4 | Certificate of Official Court Reporter            17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          COURTROOM DEPUTY:  United States District Court for the

2    District of New Mexico is in session, the Honorable David Herrera

3    Urias presiding.

4          THE COURT:  The Court's going to call the case of United

5    States of America v. Thomas Crosby.  This is No.

6    1:20-CR-01766-001-DHU and 1:22-CR-00864-001-DHU.

7       Let's have counsel state their appearances for the record.

8          MR. MOTE:  Your Honor, good morning.  Nick Mote on

9    behalf of the United States.

10         THE COURT:  Good morning, Mr. Mote.  Congratulations, by

11   the way.

12         MR. MOTE:  Thank you, Judge.

13         MR. ERICKSON:  Good morning, Your Honor.  Hans Erickson

14   for Mr. Crosby, who is here out of custody.

15         THE COURT:  Good morning to you as well, Mr. Erickson.

16   Good morning, Mr. Crosby.

17      All right.  From Probation, do we have Mr. Adolph here?

18         PROBATION OFFICER:  Yes, sir.

19         THE COURT:  All right.  Thank you for being here, sir.

20      Today we're continuing the sentencing of the Defendant in

21   this matter.  The Court began the sentencing hearing in early May

22   of this year.  In preparation for that sentencing, the Court

23   received and reviewed a number of documents that were submitted by

24   the parties and the U.S. Probation Office, including the plea

25   agreement in this case, the presentence investigation report, the

1   Defendant's sentencing memorandum and the United States'
2   sentencing memorandum.

3       At the hearing itself, the Court heard extensive arguments
4   from the parties, both of which were compelling and raised
5   important issues relevant to this matter and the appropriate
6   sentence in this case.  Both parties cited and argued issues
7   raised by reports from the U.S. Sentencing Commission, as well as
8   several empirical studies related to child pornography offenders.
9   The defense argued that a custodial sentence in this case was not
10  warranted.  The United States asked for a sentence within the
11  guideline range.

12      The Court heard from the Defendant and then continued the
13  final decision regarding the sentencing, in order to give the
14  Court additional time to consider the studies and reports
15  discussed during the hearing and the circumstances of the instant
16  offense to which the Defendant has pled guilty.  The Court has
17  considered these reports and the studies, as well as a forensic
18  evaluation conducted by Dr. Joy, and I've concluded that a lengthy
19  custodial sentence is not warranted in this matter.

20      The Court will proceed to sentencing.

21      The Court accepts the plea agreement in these cases.   The
22  Court adopts the presentence report factual findings and has
23  considered the sentencing guidelines applicable -- sentencing
24  guideline applications and the factors set forth in
25  3553(a)(1)-(7).  As to each of case Nos. 1:20-CR-01766-DHU and

1  1-22-CR-00864-001-DHU, the offense level is 28 and the criminal

2  history category is I.  The guideline imprisonment range is 78 to

3  97 months.

4      The Court notes the Defendant possessed visual depictions of

5  minors under the age of 12 engaged in sexually explicit conduct.

6      Pursuant to 18 U.S.C. 3553(a)(1)-(7), the Court has

7  determined there exists the following sentencing factors that

8  warrant the sentence outside the applicable guideline range:  That

9  would include the nature and circumstances of the offense, and the

10  history and characteristics of the Defendant pursuant to 18 U.S.C.

11  3553(a)(1); the need for the sentence imposed to reflect the

12  seriousness of the offense, to promote respect for the law and to

13  provide just punishment for the offense, pursuant to 3553(a)(2);

14  to afford adequate deterrence to criminal conduct, to protect the

15  public from further crimes of the Defendant, and to provide the

16  Defendant with needed educational or vocational training, medical

17  care or other correctional treatment in the most effective manner,

18  pursuant to 3553(a)(2); the kinds of sentences available pursuant

19  to 3553(a)(3); the need to avoid unwarranted sentence disparities

20  among defendants with similar records who have been found guilty

21  of similar conduct, pursuant to 3553(a)(6); and the need to

22  provide restitution to any victims of the offense, pursuant to

23  3553(a)(7).

24      After evaluating the factors listed above, the Court finds

25  the following:  The Defendant has no adult criminal convictions or

1  juvenile adjudications.  There's no evidence or allegation that
2  the Defendant has ever molested children.  The crime to which
3  Defendant has pled guilty is serious and concerning, but the Court
4  notes that the Defendant was diagnosed with long-standing
5  untreated autism spectrum disorder.  Dr. Joy evaluated Defendant
6  and presented several professional opinions regarding Mr. Crosby.
7  Based on those opinions and the scientific studies relied on by
8  Dr. Joy, the Court finds that the Defendant has long suffered from
9  untreated autism as well as having depression.  As opined by
10  Dr. Joy, to a reasonable degree of medical certainty, Mr. Crosby's
11  current crime is related to his diagnosis, his social deficits,
12  and his restricted interests.  Individuals with autism are
13  vulnerable to engaging in child pornography.  Their lack of social
14  skills can lead to limited sexual intimacy and friendships turning
15  to pornography for sexual activity.  Significantly, Defendant does
16  not suffer from pedophilia.  Individuals who commit child
17  pornography offenses are lower risk for recidivism than other sex
18  offenders.  Autistic individuals, like Defendant, are likely to
19  follow rules when set in place.
20      In sum, his amenability to treatment, possibility of
21  benefiting from specialized treatment, low risk of recidivism, and
22  high vulnerability in prison make him a good candidate for
23  community-based treatment.
24      The Court notes that Defendant has been on conditions of
25  release since October 20, 2020, and during that time, he has

1    participated in mental health treatment.  He is currently employed

2    full-time.  According to the U.S. Probation Office, Mr. Crosby has

3    also done well on his -- with regards to compliance with his

4    conditions of supervised pretrial release.

5         Defendant's guideline range was dramatically increased 13

6    offense levels by the enhancements under United States Sentencing

7    Guideline 2G2.2(b)(2), (b)(4), (b)(6) and (b)(7).  These

8    enhancements capture conduct that is part of the vast majority of

9    child pornography possession offenses.  The 2021 Sentencing

10   Commission report finds these enhancements were initially intended

11   to target more serious and more culpable offenders.

12        Defendant served the United States Air Force from 2013 to

13   2019, and until the instant offense, all information indicates he

14   excelled in the military.  Defendant was recognized for his

15   service with the Wartime Service Award, Airman of the Quarter, and

16   Outstanding Airman of the Year.  Defendant received an other than

17   honorable discharge from the military in relation to the charges

18   in this case, which means he is not eligible for the benefits he

19   would otherwise have earned through his service.

20        In addition to the professional medical opinion of Dr. Joy,

21   Defendant has presented persuasive empirical research that

22   indicates more severe sentences do not reduce recidivism.

23   Instead, the research has identified effective methods of what

24   works to reduce crime for these types of crimes.  The overwhelming

25   consensus is that treatment works; incarceration does not.

1    Finally, in order to have the ability to pay restitution to
2    the victims, Defendant needs to be employed.

3    Based on these findings, the Court has determined a sentence
4    below the applicable guideline imprisonment range will be
5    reasonable and sufficient but not greater than necessary to
6    accomplish the sentencing goals set forth at 18 U.S.C. 3553(a).

7    As to Indictments 1:20-CR-01766-001-DHU and
8    1:22-CR-00864-001-DHU, the Defendant Thomas Crosby is committed to
9    the custody of the Bureau of Prisons for a term of five days or
10   time served, whichever is less.  The Defendant is placed on
11   supervised release for a term of 15 years as to each count.  Said
12   terms shall run concurrently.

13   The Defendant must comply with the mandatory and standard
14   conditions of supervision, including the standard sex offender
15   conditions adopted by the District of New Mexico on July 20th,
16   2018.

17   The following special conditions will also be imposed:

18   You must participate in and successfully complete location
19   monitoring for a period of five years in the location monitoring
20   program with the active global positioning satellite GPS
21   technology, under the home detention component.  You may be
22   required to pay all or a portion of the cost of the program.  This
23   condition is imposed based on the nature and circumstances of the
24   instant offense and the need to provide the Defendant with
25   additional structure to deter any potential criminal conduct.

You must participate in an outpatient substance abuse
treatment program and follow the rules and regulations of that
program.  The probation officer will supervise your participation
in the program.  That would include the provider, location,
modality, duration, intensity, et cetera.  You may be required to
pay all or a portion of the cost of the program.  You shall waive
your right of confidentiality and allow the treatment provider to
release treatment records to the probation officer and sign all
necessary releases to enable the probation officer to monitor your
progress.  The probation officer may disclose the presentence
report, any previous substance abuse evaluations and/or other
pertinent treatment records to the treatment provider.

You must submit to substance abuse testing to determine if
you have used a prohibited substance.  Testing shall not exceed
more than 60 tests per year.  Testing may include urine testing,
the wearing of a sweat patch, and/or any form of prohibited
substance screening or testing.  You must not attempt to obstruct
or tamper with the substance abuse testing methods.  You may be
required to pay all or a portion of the cost of the testing.

You must not use or possess alcohol.  You may be required to
submit to alcohol testing that may include urine testing, a remote
alcohol testing system, and/or an alcohol monitoring technology
program, to determine if you have used alcohol.  Testing shall not
exceed more than four tests per day.  You must not attempt to
obstruct or tamper with the testing methods.  You may be required

1  to pay all or a portion of the cost of the testing.

2        You must not knowingly purchase, possess, distribute,

3  administer, or otherwise use any psychoactive substances -- this

4  would include synthetic cannabinoids, synthetic cathinones, et

5  cetera -- that impair your physical or mental functioning, whether

6  or not intended for human consumption.

7        These conditions are imposed based on the Defendant's history

8  of substance abuse specifically involving alcohol and recently

9  resulting in new criminal charges for driving under the influence.

10        You must participate in a mental health treatment program and

11  follow the rules and regulations of that program.  The probation

12  officer, in consultation with the treatment provider, will

13  supervise your participation in the program.  Defendant's

14  treatment should consider and specifically address his autism

15  diagnosis, as recommended in Dr. Joy's evaluation.  You may be

16  required to pay all or a portion of the cost of the program.  You

17  shall waive your right of confidentiality and allow the treatment

18  provider to release treatment records to the probation officer and

19  sign all necessary releases to enable the probation officer to

20  monitor your progress.  The probation officer may disclose the

21  presentence report, any previous mental health evaluations and/or

22  other pertinent treatment records to the treatment provider.

23        You must take all mental health medications that are

24  prescribed by your treating physician.  You may be required to pay

25  all or a portion of the cost of the program.

1    These conditions are imposed based on the Defendant's history
2    of mental health concerns involving depression, anxiety, PTSD, and
3    multiple suicide attempts.
4    You must undergo a sex offense specific assessment to
5    determine the level of risk for sexual dangerousness, recidivism,
6    and amenability to treatment, and formulate treatment
7    recommendations if treatment is necessary.  You may be required to
8    pay all or a portion of the cost of the assessment.  You shall
9    waive your right of confidentiality and allow the treatment
10   provider to release treatment records to the probation officer and
11   sign all necessary releases to enable the probation officer to
12   monitor your progress.  The probation officer shall disclose the
13   presentence report, any previous sex offender evaluations, and/or
14   other pertinent treatment records to the treatment provider.
15   If recommended in the sex offense specific assessment, you
16   must begin attending and participating in sex offender treatment
17   consistent with the recommendations of the evaluation.  You must
18   follow the rules and regulations of that program.  The probation
19   officer, in conjunction with the treatment provider, will
20   supervise your participation in the program.  That would include
21   the location, modality, duration, intensity, et cetera.
22   Furthermore, you must submit to clinical polygraph examinations as
23   directed by the probation officer and/or treatment provider.  You
24   may be required to pay a portion or all of the cost of the
25   assessments and treatment.

1    You are prohibited from viewing or possessing any material

2  that depicts sexually explicit conduct as defined in 18 U.S.C.

3  2256, including images, books, writings, drawings, video games, or

4  videos depicting actual sexual intercourse.  This also includes

5  computer or computer-generated images or pictures, whether made or

6  produced by electronic, mechanical or other means.  Should the sex

7  offense specific assessment determine this factor is not a risk,

8  then this condition shall not be enforced.

9    You must not have direct contact with children under the age

10 of 18 years without written approval of the treatment provider in

11 conjunction with the probation officer.  If you do have any direct

12 contact with any child you know or reasonably should know to be

13 under the age of 18 years, including your own children, without

14 the permission of the probation officer, in conjunction with the

15 treatment provider, you must report such contact to the probation

16 officer within 24 hours.  Direct contact includes written

17 communication, in-person communication, or physical contact.

18 Direct contact does not include incidental conduct during ordinary

19 daily activities in public places.

20    You are restricted from engaging in an occupation where you

21 have access to children, without prior approval of the probation

22 officer.

23    You must not go to or remain within 100 feet of schoolyards,

24 parks, playgrounds, arcades, or other places used primarily by

25 children under the age of 18 years old.

1    You must not volunteer for any activities in which you

2   supervise children or adults with mental or physical disabilities.

3    You must cooperate and comply with the United States

4   Probation Office's Computer Restriction and Monitoring Program,

5   CRMP.  You may possess or use a computer as defined in 18 U.S.C.

6   1030(e)(1) or an internet capable device under certain conditions.

7   This is not a prohibition on lawful computer or internet capable

8   device use but a restriction on the type of computer or internet

9   capable device you may use.  First, you must identify to the

10   probation officer your computer or internet capable device or

11   devices, data storage device or devices, or any other electronic

12   equipment capable of storing, retrieving and/or accessing data

13   that you possess or use.  You will agree to only use the computer

14   or internet capable device or devices you have disclosed to the

15   probation officer.

16    Second, you must allow the installation of monitoring

17   software or hardware on your computer or internet capable devices

18   at your expense, and you must refrain from attempting to interfere

19   with the operation of that software/hardware.  Periodic searches

20   shall be conducted to determine whether the monitoring software is

21   functioning effectively after installation, and determine whether

22   there have been attempts to circumvent the monitoring software

23   after installation.  You understand that the software will record

24   all activity on your computer or internet capable devices, and you

25   shall inform any other users that said computer or internet

1  capable devices are subject to monitoring.  A computer or internet

2  capable device that is not able to be effectively monitored will

3  not be approved for use.

4      Third, you must disclose any user name or identifications and

5  passwords for all computer or internet capable devices.

6      Fourth, you must submit to the probation officer, upon

7  request, any cellular or telephone internet service provider

8  billing records or receipts, to verify that you are not utilizing

9  services that are prohibited.

10      These conditions are imposed based on the nature and

11  circumstances of the instant offense, and the need to assure the

12  safety of the community in which the Defendant resides.

13      Pursuant to the Mandatory Restitution for Sexual Exploitation

14  of Children Act and 18 U.S.C. 2259, it is further ordered that the

15  Defendant will make restitution in the amount of $2,000 as to each

16  victim series:  Marineland 1, Vicky, Jan_socks1, Blue Pillow,

17  Lighthouse, and Jenny, for a total restitution amount of $12,000.

18  Restitution shall be submitted to the Clerk of the Court,

19  Attention Intake, 333 Lomas Boulevard Northwest, Suite 270,

20  Albuquerque, New Mexico, 87102, to then be forwarded to the

21  victims.  The restitution will be paid in the amount of $200 per

22  month or 10 percent of the Defendant's monthly income.  The

23  victim's recovery is limited to the amount of the victim's loss,

24  and the Defendant's liability for restitution ceases if and when

25  the victim receives restitution.

1      Based on the Defendant's restitution requirements, the Court

2   will not impose a fine.

3      Consistent with the stipulation in the plea agreement, the

4   Defendant forfeits his rights, title and interest as detailed in

5   paragraph 22 of the plea agreement.

6      The Defendant shall pay a special assessment of $100 as to

7   each count of conviction, for a total of $200, which is due

8   immediately.

9      The Court finds that the Defendant is indigent and will not

10  be required to pay an assessment under the Amy, Vicky, and Andy

11  Child Pornography Victim Assistance Act of 2018.  The Court notes

12  that the Defendant has court-appointed counsel.  He makes $2400 a

13  month.  He has now been ordered to pay $12,000 in restitution, and

14  his autism and sex offender status makes it unclear how much

15  future earning capacity he actually will have.

16     The Court finds that pursuant to the plea agreement, the

17  Defendant waives the right to appeal the final sentence imposed by

18  this Court under 18 U.S.C. 3742(a).

19     Are there any legal objections to the sentence as I have just

20  imposed it?  Mr. Mote?

21          MR. MOTE:  Not at this time, Your Honor.

22          THE COURT:  Mr. Erickson?

23          MR. ERICKSON:  No, thank you, Your Honor.

24          THE COURT:  Any instructions from the U.S. Probation

25  Office for the Defendant?

1          PROBATION OFFICER:  Yes, Your Honor.  We'd just ask that

2    he report to our office on the first floor right after the court

3    hearing.

4          THE COURT:  All right.  Anything further from the

5    parties on this matter?

6          MR. MOTE:  No, Your Honor.  Thank you.

7          MR. ERICKSON:  No.  Thank you, Your Honor.

8          THE COURT:  The Court will be in recess in this matter.

9    Thank you.

10   (Court in recess at 11:42 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    IN THE UNITED STATES DISTRICT COURT

2                    FOR THE DISTRICT OF NEW MEXICO

3      _____
                                      )
4      UNITED STATES OF AMERICA,      )    Case No. 1:20-CR-01766-001-DHU
              Plaintiff,              )    Case No. 1:22-CR-00864-001-DHU
5                                     )
          vs.                         )
6                                     )
       THOMAS CROSBY,                 )
7              Defendant.             )
       _____)

8

9              CERTIFICATE OF OFFICIAL COURT REPORTER

10        I, CARMELA V. McALISTER, CRR, RPR, CMRS, New Mexico CCR #306,

11     Federal Official Realtime Court Reporter, in and for the United

12     States District Court for the District of New Mexico, do hereby

13     certify that pursuant to Section 753, Title 28, United States

14     Code, that the foregoing is a true and correct transcript of the

15     stenographically reported proceedings held in the above-entitled

16     matter on July 13, 2023, and that the transcript page format is in

17     conformance with the regulations of the Judicial Conference of the

18     United States.

19        Dated this 18th day of July 2023.

20

21

22

23     _____
       CARMELA V. McALISTER, CRR, RPR, CMRS, NM CCR #306
       United States Court Reporter
24     333 Lomas Blvd., NW
       Albuquerque, New Mexico  87102
25     Phone:  505-348-2094
       Email: carmela_mcalister@nmd.uscourts.gov

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
**District of New Mexico**

UNITED STATES OF AMERICA

V.

**THOMAS CROSBY**

**Judgment in a Criminal Case**

Case Number:  **1:20CR01766-001DHU and 1:22CR00864-001DHU**
USM Number:  **13060-509**
Defendant's Attorney:  **Hans Erickson**

## THE DEFENDANT:

☒ pleaded guilty to count(s)  **Indictment in 1:22CR00864-001DHU;  Indictment in 1:20CR1766-001DHU**.

☐ pleaded nolo contendere to count(s)  which was accepted by the court.

☐ was found guilty on count(s)  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec. 2252(a)(4)(B) and 18 USC Sec. 2252(b)(2) | Possession of Visual Depictions of Minor Engaging in Sexually Explicit Conduct | 10/16/2020 | 1 Indictment 1:22CR0864DHU |

The defendant is sentenced as provided in pages 2 through 10 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984 .

☐ The defendant has been found not guilty on count(s) .

☐ Count(s)  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**July 13, 2023**
Date of Imposition of Judgment

**/s/ David H. Urias**
Signature of Judge

**Honorable David H. Urias**
**United States District Judge**
Name and Title of Judge

**July 27, 2023**
Date

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 1A

Judgment - Page 2 of
10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## ADDITIONAL COUNTS OF CONVICTION

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec. 2252(a)(4)(B) and 18 USC Sec. 2252(b)(2) | Possession of Visual Depictions of Minor Engaging in Sexually Explicit Conduct | 11/14/2018 | 1 Indictment 1:20CR01766-001DHU |

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 2 - Imprisonment

Judgment - Page 3 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:  **5  days or time served, whichever is less**.

**A term of 5 days or time served; whichever is less is imposed as to Indictments 1:20CR01766-001DHU and 1:22CR00864-001DHU**

☐ The court makes the following recommendations to the Bureau of Prisons:

☐   The defendant is remanded to the custody of the United States Marshal.
☐   The defendant shall surrender to the United States Marshal for this district:
    ☐   at  on .
    ☐   as notified by the United States Marshal.
☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
    ☐   before 2 p.m. on .
    ☐   as notified by the United States Marshal.
    ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to

_____ at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3 – Supervised Release

Judgment - Page 4 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:  **15years** .

## MANDATORY CONDITIONS

1.   You must not commit another federal, state, or local crime.

2.   You must not unlawfully possess a controlled substance.

3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(Check, if applicable.)*

4.   ☐   You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.   ☒   You must cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable)*

6.   ☒   You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state, local, or tribal sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.   ☐   You must participate in an approved program for domestic violence. *(Check, if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.   You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2.   After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3.   You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4.   You must answer truthfully the questions asked by your probation officer.

5.   You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6.   You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7.   You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, require you to notify that person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

14. You must undergo a sex offense-specific assessment to determine the level of risk for sexual dangerousness, recidivism, and amenability to treatment and formulate treatment recommendations if treatment is necessary. You may be required to pay all, or a portion of the cost of the assessment.

15. You will waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer shall disclose the presentence report and/or any previous sex offender or mental health evaluations to the treatment provider.

16. You must submit to a search of person, property, residence, vehicles, documents, businesses, computers [as defined in 18 U.S.C. 1030(e)(1)], and other electronic communications or data storage devices or media effects, at any time, by a probation officer with reasonable suspicion concerning a violation of a condition of probation or supervised release, or unlawful conduct by the person, in the lawful discharge of the officer's supervision functions. You must inform any other occupants that the premises may be subject to searches pursuant to this condition. Failure to submit to a search may be grounds for revocation of supervision.

17. You will not have any direct or indirect contact or communication with the victim or his or her family, or go near or enter the premises where the victim or his or her family resides, is employed, attends school or treatment, except under circumstances approved in advance and in writing by the probation officer.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
           Sheet 5 – Special Conditions                                                           Judgment - Page 6 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## SPECIAL CONDITIONS OF SUPERVISION

**You must not use or possess alcohol. You may be required to submit to alcohol testing that may include urine testing, a remote alcohol testing system, and/or an alcohol monitoring technology program to determine if you have used alcohol. Testing shall not exceed more than 4 test(s) per day. You must not attempt to obstruct or tamper with the testing methods. You may be required to pay all, or a portion, of the costs of the testing.**

**You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic cannabinoids, synthetic cathinones, etc.) that impair your physical or mental functioning, whether or not intended for human consumption.**

**You shall waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer may disclose the presentence report, any previous mental health evaluations and/or other pertinent treatment records to the treatment provider.**

**You must take all mental health medications that are prescribed by your treating physician. You may be required to pay all, or a portion, of the costs of the program.**

**You must participate in and successfully complete location monitoring for a period of 5 years in the location monitoring program with the Active Global Positioning Satellite (GPS) technology under the home detention component. You may be required to pay all, or a portion, of the costs of the program.**

**You must undergo a sex offense-specific assessment to determine the level of risk for sexual dangerousness, recidivism, and amenability to treatment and formulate treatment recommendations if treatment is necessary. You may be required to pay all, or a portion of the cost of the assessment.**

**You shall waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer shall disclose the presentence report, any previous sex offender evaluations and/or other pertinent treatment records to the treatment provider.**

**If recommended in the sex offense-specific assessment, you must begin attending and participating in sex offender treatment consistent with the recommendations of the evaluation. You must follow the rules and regulations of that program. The probation officer, in conjunction with the treatment provider, will supervise your participation in the program (location, modality, duration, intensity, etc.). Furthermore, you must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider. You may be required to pay a portion or all of the cost of the assessments and treatment.**

**You are prohibited from viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse. This also includes computer or computer-generated images or pictures,**

whether made or produced by electronic, mechanical, or other means.  Should the sex offense-specific assessment determine this factor is not a risk, then this condition shall not be enforced.

You must not have direct contact with children under the age of 18 years without written approval of the treatment provider in conjunction with the probation officer.  If you do have any direct contact with any child you know or reasonably should know to be under the age of 18 years, including your own children, without the permission of the probation officer in conjunction with the treatment provider, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

You are restricted from engaging in an occupation where you have access to children without prior approval of the probation officer.

You must not go to or remain within 100 feet of school yards, parks, playgrounds, arcades, or other places used primarily by children under the age of 18years old.

You must not volunteer for any activities in which you supervise children or adults with mental or physical disabilities.

You must cooperate and comply with the United States Probation Office's Computer Restriction and Monitoring Program (CRMP): You may possess or use a computer(s) (as defined in 18 U.S.C. 1030(e)(1)) or an internet capable device under certain conditions. This is not a prohibition on lawful computer or internet capable device use, but a restriction on the type of computer or internet capable device you may use. First, you must identify to the probation officer your computer or internet capable device(s), data storage device(s), or any other electronic equipment capable of storing, retrieving, and/or accessing data that you possess or use. You will agree to only use the computer or internet capable device(s) you have disclosed to the probation officer. Second, you must allow the installation of monitoring software/hardware on your computer or internet capable device(s), at your expense, and you must refrain from attempting to interfere with the operation of that software/hardware. Periodic searches shall be conducted to determine whether the monitoring software is functioning effectively after installation; and to determine whether there have been attempts to circumvent the monitoring software after installation. You understand that the software will record all activity on your computer or internet capable device(s), and you shall inform any other users that said computer or internet capable device(s) are subject to monitoring. A computer or internet capable device that is not able to be effectively monitored will not be approved for use. Third, you must disclose any username or identification(s) and password(s) for all computer or internet capable devices. Fourth, you must submit to the probation officer, upon request, any cellular or telephone/internet service provider billing records or receipts, to verify that you are not utilizing services that are prohibited.

You must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You may be required to pay all, or a portion, of the costs of the program.

You shall waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer may disclose the presentence report, any previous substance abuse evaluations and/or other pertinent treatment records to the treatment provider.

**You must submit to substance abuse testing to determine if you have used a prohibited substance. Testing shall not exceed more than 60 test(s) per year.  Testing may include urine testing, the wearing of a sweat patch, and/or any form of prohibited substance screening or testing. You must not attempt to obstruct or tamper with the substance abuse testing methods. You may be required to pay all, or a portion, of the costs of the testing.**

**You must participate in a mental health treatment program and follow the rules and regulations of that program. Defendant's treatment should consider and specifically address his autism diagnosis as recommended in Dr. Joy's evaluation. The probation officer, in consultation with the treatment provider, will supervise your participation in the program. You may be required to pay all, or a portion, of the costs of the program.**

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____          Date _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 – Criminal Monetary Penalties

Judgment - Page 9 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments.

☐  The Court hereby remits the defendant's Special Penalty Assessment; the fee is waived and no payment is required.

| Totals: | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| | $200.00 | $12,000.00 | $0.00 | $ 0.00 | $0.00 |

☐  The determination of the restitution is deferred until . An *Amended Judgment in a Criminal Case* will be entered after such determination.
☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☒  In full immediately; or

B  ☐  $ due immediately, balance due (see special instructions regarding payment of criminal monetary penalties).

**Special instructions regarding the payment of criminal monetary penalties: Criminal monetary penalties are to be made payable by cashier's check, bank or postal money order to the U.S. District Court Clerk, 333 Lomas Blvd. NW, Albuquerque, New Mexico 87102 unless otherwise noted by the court. Payments must include defendant's name, current address, case number and type of payment.**

**Based on the defendant's restitution requirements the Court will not impose a fine.**

**Pursuant to the Mandatory Restitution for Sexual Exploitation of Children Act and 18 U.S.C. 2259, it is further ordered that the defendant will make restitution in the amount of $2,000.00 as to each victim series: Marineland1, Vicky, Jan_Socks1, Bluepillow, Lighthouse, and Jenny; for a total restitution amount of $12,000.00. Restitution shall be submitted to the Clerk of the Court, Attention Intake, 333 Lomas Boulevard N.W. Suite 270, Albuquerque, New Mexico 87102, to then be forwarded to the victim(s). The restitution will be paid in the amount of $200 per month or 10% of the defendant's monthly income. The victim(s) recovery is limited to the amount of the victim(s) loss, and the defendant's liability for restitution ceases if, and when, the victim(s) receives(s) restitution.**

**The Court finds the defendant indigent and is not subject to the assessment for the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 or the assessment for the Justice for Victim's of Trafficking Act of 2015.**

**Consistent with a stipulation in the Plea Agreement, the defendant forfeits his rights, title, and interest as detailed in paragraph 22 of the plea agreement.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order:  (1) assessment,  (2) restitution principal,  (3) restitution interest,  (4)  AVAA assessment,  (5) fine principal,  (6) fine interest,  (7) community restitution,  (8) JVTA assessment,  (9) penalties, and  (10) costs, including cost of prosecution and court costs.

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.

** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT
**District of New Mexico**

UNITED STATES OF AMERICA

V.

**THOMAS CROSBY**

**Judgment in a Criminal Case**

Case Number:  **1:20CR01766-001DHU and 1:22CR00864-001DHU**
USM Number:  **13060-509**
Defendant's Attorney:  **Hans Erickson**

**THE DEFENDANT:**

☒ pleaded guilty to count(s)  **Indictment in 1:22CR00864-001DHU;  Indictment in 1:20CR1766-001DHU**.

☐ pleaded nolo contendere to count(s)  which was accepted by the court.

☐ was found guilty on count(s)  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title and Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC Sec. 2252(a)(4)(B) and 18 USC Sec. 2252(b)(2) | Possession of Visual Depictions of Minor Engaging in Sexually Explicit Conduct | 10/16/2020 | 1 Indictment 1:22CR0864DHU |

The defendant is sentenced as provided in pages 2 through 10 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984 .

☐ The defendant has been found not guilty on count(s) .

☐ Count(s)  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

**July 13, 2023**
Date of Imposition of Judgment

**/s/ David H. Urias**
Signature of Judge

**Honorable David H. Urias**
**United States District Judge**
Name and Title of Judge

**July 27, 2023**
Date

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 1A

Judgment - Page 2 of
10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## ADDITIONAL COUNTS OF CONVICTION

| *Title and Section* | *Nature of Offense* | *Offense Ended* | *Count* |
|---|---|---|---|
| 18 USC Sec. 2252(a)(4)(B) and 18 USC Sec. 2252(b)(2) | Possession of Visual Depictions of Minor Engaging in Sexually Explicit Conduct | 11/14/2018 | 1 Indictment 1:20CR01766-001DHU |

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 2 - Imprisonment

Judgment - Page 3 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:  **5  days or time served, whichever is less**.

**A term of 5 days or time served; whichever is less is imposed as to Indictments 1:20CR01766-001DHU and 1:22CR00864-001DHU**

☐ The court makes the following recommendations to the Bureau of Prisons:

☐    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐    at  on .

    ☐    as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐    before 2 p.m. on .

    ☐    as notified by the United States Marshal.

    ☐    as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to

_____ at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3 – Supervised Release

Judgment - Page 4 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:  **15years** .

## MANDATORY CONDITIONS

1.    You must not commit another federal, state, or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(Check, if applicable.)*

4.    ☐    You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.    ☒    You must cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable)*
6.    ☒    You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state, local, or tribal sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐    You must participate in an approved program for domestic violence. *(Check, if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.    You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.    After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.    You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.    You must answer truthfully the questions asked by your probation officer.
5.    You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.    You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.    You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, require you to notify that person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13. You must follow the instructions of the probation officer related to the conditions of supervision.

14. You must undergo a sex offense-specific assessment to determine the level of risk for sexual dangerousness, recidivism, and amenability to treatment and formulate treatment recommendations if treatment is necessary. You may be required to pay all, or a portion of the cost of the assessment.

15. You will waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer shall disclose the presentence report and/or any previous sex offender or mental health evaluations to the treatment provider.

16. You must submit to a search of person, property, residence, vehicles, documents, businesses, computers [as defined in 18 U.S.C. 1030(e)(1)], and other electronic communications or data storage devices or media effects, at any time, by a probation officer with reasonable suspicion concerning a violation of a condition of probation or supervised release, or unlawful conduct by the person, in the lawful discharge of the officer's supervision functions. You must inform any other occupants that the premises may be subject to searches pursuant to this condition. Failure to submit to a search may be grounds for revocation of supervision.

17. You will not have any direct or indirect contact or communication with the victim or his or her family, or go near or enter the premises where the victim or his or her family resides, is employed, attends school or treatment, except under circumstances approved in advance and in writing by the probation officer.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 – Special Conditions

Judgment - Page 6 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

## SPECIAL CONDITIONS OF SUPERVISION

**You must not use or possess alcohol. You may be required to submit to alcohol testing that may include urine testing, a remote alcohol testing system, and/or an alcohol monitoring technology program to determine if you have used alcohol. Testing shall not exceed more than 4 test(s) per day.  You must not attempt to obstruct or tamper with the testing methods. You may be required to pay all, or a portion, of the costs of the testing.**

**You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic cannabinoids, synthetic cathinones, etc.) that impair your physical or mental functioning, whether or not intended for human consumption.**

**You shall waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer may disclose the presentence report, any previous mental health evaluations and/or other pertinent treatment records to the treatment provider.**

**You must take all mental health medications that are prescribed by your treating physician. You may be required to pay all, or a portion, of the costs of the program.**

**You must participate in and successfully complete location monitoring for a period of 5 years in the location monitoring program with the Active Global Positioning Satellite (GPS)  technology under the home detention component. You may be required to pay all, or a portion, of the costs of the program.**

**You must undergo a sex offense-specific assessment to determine the level of risk for sexual dangerousness, recidivism, and amenability to treatment and formulate treatment recommendations if treatment is necessary.  You may be required to pay all, or a portion of the cost of the assessment.**

**You shall waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer shall disclose the presentence report, any previous sex offender evaluations and/or other pertinent treatment records to the treatment provider.**

**If recommended in the sex offense-specific assessment, you must begin attending and participating in sex offender treatment consistent with the recommendations of the evaluation.  You must follow the rules and regulations of that program. The probation officer, in conjunction with the treatment provider, will supervise your participation in the program (location, modality, duration, intensity, etc.).  Furthermore, you must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider. You may be required to pay a portion or all of the cost of the assessments and treatment.**

**You are prohibited from viewing or possessing any material that depicts sexually explicit conduct as defined in 18 U.S.C. 2256, including images, books, writings, drawings, video games, or videos depicting actual sexual intercourse.  This also includes computer or computer-generated images or pictures,**

whether made or produced by electronic, mechanical, or other means.  Should the sex offense-specific assessment determine this factor is not a risk, then this condition shall not be enforced.

You must not have direct contact with children under the age of 18 years without written approval of the treatment provider in conjunction with the probation officer.  If you do have any direct contact with any child you know or reasonably should know to be under the age of 18 years, including your own children, without the permission of the probation officer in conjunction with the treatment provider, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

You are restricted from engaging in an occupation where you have access to children without prior approval of the probation officer.

You must not go to or remain within 100 feet of school yards, parks, playgrounds, arcades, or other places used primarily by children under the age of 18years old.

You must not volunteer for any activities in which you supervise children or adults with mental or physical disabilities.

You must cooperate and comply with the United States Probation Office's Computer Restriction and Monitoring Program (CRMP): You may possess or use a computer(s) (as defined in 18 U.S.C. 1030(e)(1)) or an internet capable device under certain conditions. This is not a prohibition on lawful computer or internet capable device use, but a restriction on the type of computer or internet capable device you may use. First, you must identify to the probation officer your computer or internet capable device(s), data storage device(s), or any other electronic equipment capable of storing, retrieving, and/or accessing data that you possess or use. You will agree to only use the computer or internet capable device(s) you have disclosed to the probation officer. Second, you must allow the installation of monitoring software/hardware on your computer or internet capable device(s), at your expense, and you must refrain from attempting to interfere with the operation of that software/hardware. Periodic searches shall be conducted to determine whether the monitoring software is functioning effectively after installation; and to determine whether there have been attempts to circumvent the monitoring software after installation. You understand that the software will record all activity on your computer or internet capable device(s), and you shall inform any other users that said computer or internet capable device(s) are subject to monitoring. A computer or internet capable device that is not able to be effectively monitored will not be approved for use. Third, you must disclose any username or identification(s) and password(s) for all computer or internet capable devices. Fourth, you must submit to the probation officer, upon request, any cellular or telephone/internet service provider billing records or receipts, to verify that you are not utilizing services that are prohibited.

You must participate in an outpatient substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You may be required to pay all, or a portion, of the costs of the program.

You shall waive your right of confidentiality and allow the treatment provider to release treatment records to the probation officer and sign all necessary releases to enable the probation officer to monitor your progress. The probation officer may disclose the presentence report, any previous substance abuse evaluations and/or other pertinent treatment records to the treatment provider.

**You must submit to substance abuse testing to determine if you have used a prohibited substance. Testing shall not exceed more than 60 test(s) per year.  Testing may include urine testing, the wearing of a sweat patch, and/or any form of prohibited substance screening or testing. You must not attempt to obstruct or tamper with the substance abuse testing methods. You may be required to pay all, or a portion, of the costs of the testing.**

**You must participate in a mental health treatment program and follow the rules and regulations of that program. Defendant's treatment should consider and specifically address his autism diagnosis as recommended in Dr. Joy's evaluation. The probation officer, in consultation with the treatment provider, will supervise your participation in the program. You may be required to pay all, or a portion, of the costs of the program.**

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 6 – Criminal Monetary Penalties
Judgment - Page 9 of 10

DEFENDANT: **THOMAS CROSBY**
CASE NUMBER: **1:20CR01766-001DHU and 1:22CR00864-001DHU**

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments.

☐   The Court hereby remits the defendant's Special Penalty Assessment; the fee is waived and no payment is required.

| **Totals:** | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| | $200.00 | $12,000.00 | $0.00 | $ 0.00 | $0.00 |

☐   The determination of the restitution is deferred until .  An *Amended Judgment in a Criminal Case* will be entered after such determination.
☐   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☒   In full immediately; or

B   ☐   $ due immediately, balance due (see special instructions regarding payment of criminal monetary penalties).

**Special instructions regarding the payment of criminal monetary penalties: Criminal monetary penalties are to be made payable by cashier's check, bank or postal money order to the U.S. District Court Clerk, 333 Lomas Blvd. NW, Albuquerque, New Mexico 87102 unless otherwise noted by the court. Payments must include defendant's name, current address, case number and type of payment.**

**Based on the defendant's restitution requirements the Court will not impose a fine.**

**Pursuant to the Mandatory Restitution for Sexual Exploitation of Children Act and 18 U.S.C. 2259, it is further ordered that the defendant will make restitution in the amount of $2,000.00 as to each victim series: Marineland1, Vicky, Jan_Socks1, Bluepillow, Lighthouse, and Jenny; for a total restitution amount of $12,000.00. Restitution shall be submitted to the Clerk of the Court, Attention Intake, 333 Lomas Boulevard N.W. Suite 270, Albuquerque, New Mexico 87102, to then be forwarded to the victim(s). The restitution will be paid in the amount of $200 per month or 10% of the defendant's monthly income. The victim(s) recovery is limited to the amount of the victim(s) loss, and the defendant's liability for restitution ceases if, and when, the victim(s) receives(s) restitution.**

**The Court finds the defendant indigent and is not subject to the assessment for the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 or the assessment for the Justice for Victim's of Trafficking Act of 2015.**

**Consistent with a stipulation in the Plea Agreement, the defendant forfeits his rights, title, and interest as detailed in paragraph 22 of the plea agreement.**

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

Payments shall be applied in the following order:  (1) assessment,  (2) restitution principal,  (3) restitution interest,  (4)  AVAA assessment,  (5) fine principal,  (6) fine interest,  (7) community restitution,  (8) JVTA assessment,  (9) penalties, and  (10) costs, including cost of prosecution and court costs.

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.

** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.