# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

_____

## NOS. 23-2155 & 23-2156

_____

**UNITED STATES OF AMERICA,**

**Plaintiff/Appellant,**

**vs.**

**THOMAS CROSBY,**

**Defendant/Appellee.**

_____

**Appeal from the United States District Court**
**For the District of New Mexico**
**District Court Nos. 1:22-cr-864-DHU & 1:20-cr-1766-DHU**
**Hon. David Herrera Urias, United States District Judge**
_____

## APPELLANT'S REPLY BRIEF

_____

**ALEXANDER M.M. UBALLEZ**
United States Attorney

**TIFFANY L. WALTERS**
Assistant U.S. Attorney
201 Third Street NW, Suite 900
Albuquerque, NM  87102
(505) 346-7274
Attorneys for Appellee

**March 2024**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND OTHER AUTHORITIES ............................................ ii

REPLY .................................................................................................... 1

I.     The United States raises no procedural-error claims ............................. 1

II.    The sentence imposed is substantively unreasonable ............................ 2

    A.    The time-served sentence does not meet the need for retribution under § 3553(a)(2)(A) ..................................................... 2

    B.    The district court's overemphasis on Crosby's history and characteristics is manifestly unreasonable ................................... 6

    C.    The sentence imposed does not reflect the need for general deterrence under § 3553(a)(2)(B) .................................................. 8

    D.    The sentence is insufficient to promote incapacitation as required by § 3553(a)(2)(C) ............................................................ 9

    E.    Crosby's sentence creates an unwarranted sentencing disparity that § 3553(a)(6) instructs courts to avoid ................. 10

    F.    The need for restitution cannot justify such a lenient sentence ....................................................................................... 14

    G.    *Cookson* supports reversal ............................................................ 15

CONCLUSION ....................................................................................... 18

TYPE-VOLUME CERTIFICATION ............................................................... 19

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION ...................... 20

i

## TABLE OF CASES AND OTHER AUTHORITIES

### TABLE OF CASES

**PAGE**

*Gall v. United States,*
  552 U.S. 38 (2007)..................................................................... 3, 10, 13

*Kelly v. Robinson,*
  479 U.S. 36 (1986) .......................................................................... 8

*United States v. Anthony,*
  25 F.4th 792 (10th Cir. 2022) ........................................................ 4

*United States v. Barnes,*
  890 F.3d 910 (10th Cir. 2018) ....................................................... 9

*United States v. Booker,*
  63 F.4th 1254 (10th Cir. 2023) ...................................................... 3

*United States v. Cookson,*
  922 F.3d 1079 (10th Cir. 2019) ........................................ 15, 16, 17

*United States v. Crosby,*
  No. 2:23-cr-243-CCW (W.D. Pa.) .................................................. 4

*United States v. Crosby,*
  No. 2:23-cr-244-CCW (W.D. Pa.) .................................................. 4

*United States v. DeRusse,*
  859 F.3d 1232 (10th Cir. 2017) .............................................. 6, 7, 8

*United States v. Gordon,*
  710 F.3d 1124 (10th Cir. 2013) .................................................... 13

*United States v. Gross,*
  44 F.4th 1298 (10th Cir. 2022) ...................................................... 1

*United States v. Sample,*
  901 F.3d 1196 (10th Cir. 2018) .............................................. 11, 14

*United States v. Walker*,
  844 F.3d 1253 (10th Cir. 2017) ............................................................. 5, 6, 10

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

<u>Statutes</u>

18 U.S.C. § 2259 ................................................................................. 4

18 U.S.C. § 3553(a) .............................................................. 3, 6, 9, 14, 15

18 U.S.C. § 3553(a)(2)(A) ........................................................... 2, 3, 4

18 U.S.C. § 3553(a)(2)(B) ................................................................... 8

18 U.S.C. § 3553(a)(2)(C) ................................................................... 9

18 U.S.C. § 3553(a)(2)(D) ................................................................. 15

18 U.S.C. § 3553(a)(3) ....................................................................... 15

18 U.S.C. § 3553(a)(6) ....................................................................... 10

18 U.S.C. § 3562(a) ..................................................................... 3, 15

18 U.S.C. § 3583(c) ..................................................................... 3, 15

18 U.S.C. § 3583(e) ........................................................................... 4

<u>Rules</u>

Fed. R. App. P. 28(a) ........................................................................ 12

Fed. R. App. P. 28(b) ........................................................................ 12

Tenth Cir. R. 28.3 ............................................................................ 12

USSG § 2G2.2 ............................................................................. 2, 13

<u>Other Authorities</u>

*Black's Law Dictionary* (11th ed. 2019) ............................................ 15

# REPLY

## I.    The United States raises no procedural-error claims.

Crosby contends that the United States raises a procedural claim when it argues that the district court "ignored" his decade-long practice of possessing child pornography, the aggravating nature of his offense, and his "real-time recidivism" in continuing to possess child pornography even after his collection was seized by law enforcement. AB.5–11.[1] While there is some ambiguity in the term "ignore," the United States' point was that the district court's time-served sentence disregarded the identified factors. The United States is not arguing that the court failed to consider these factors, only that they are inadequately reflected in the district court's sentence. This is a substantive error. *See United States v. Gross*, 44 F.4th 1298, 1303 (10th Cir. 2022) ("[P]rocedural error is the failure to consider all the relevant factors, whereas substantive error is when the district court imposes a sentence that does not fairly reflect those factors.") (quotation omitted). To be clear, the United States is only challenging the substantive reasonableness of Crosby's sentence.

---

[1] The answer brief is cited as "AB.[page]" and the opening brief as "OB.[page]."

1

## II.    The sentence imposed is substantively unreasonable.

### A.    The time-served sentence does not meet the need for retribution under § 3553(a)(2)(A).

Addressing the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment, Crosby first argues that the district court's variance is justified by its policy disagreement with certain offense-level enhancements in USSG § 2G2.2. AB.13. He points to the district court's findings that these enhancements capture conduct that is part of the vast majority of child-pornography cases and that these enhancements were intended to target more serious and culpable offenders. *Id.* As set forth in the opening brief at 35–36, the district court's policy disagreement with these enhancements does not explain why a time-served sentence, well below the *base* offense level for his offense, adequately meets the need for retribution for Crosby's crimes. Regardless of how Crosby's conduct compares to that of other offenders, the district court was required to impose a sentence that reflects the seriousness of what Crosby actually did. In his answer brief, Crosby offers no argument to explain how a five-day, time-served sentence adequately reflects the seriousness of his conduct in *two separate cases* of possessing and making publicly available via peer-to-peer networks numerous horrifying images depicting the sexual abuse of young children.

2

Crosby next contends that his term of supervised release should be considered in evaluating whether his sentence provided just punishment. AB.14–15. To support his position, Crosby cites *Gall v. United States*, 552 U.S. 38, 48 (2007), which details the substantial restrictions on liberty inherent in a probationary sentence. But by statute, probation may properly serve the retributive purposes of § 3553(a)(2)(A), *see* 18 U.S.C. § 3562(a), while supervised release may not. *See* 18 U.S.C. § 3583(c) (omitting § 3553(a)(2) as a consideration in imposing supervised release); *United States v. Booker*, 63 F.4th 1254, 1259–61 (10th Cir. 2023) ("[W]hen a statute uses mandatory language to direct a court to consider some but not all § 3553(a) sentencing factors, it is procedural error to consider an unenumerated factor.").[2] The same statutory prohibition precludes this Court from relying on Crosby's term of supervised release to conclude that his sentence adequately reflected the retributive purposes of § 3553(a)(2)(A). No matter how restrictive Crosby's conditions of supervised release are, they cannot serve as punishment for his crimes.[3]

---

[2] Contrary to Crosby's suggestion, AB.14, the United States is not contending that the district court ran afoul of this prohibition; indeed, the court never indicated that it was imposing the term of supervised release for retributive purposes. Instead, the United States is arguing that imposing a term of supervised release for retributive purposes is *statutorily prohibited* and thus cannot support the substantive reasonableness of his sentence.

[3] Crosby's original 15-year term of supervised release was recently reduced to 10 years. On March 11, 2024, the district court in the Western District of

That leaves restitution. While Crosby is correct that the restitution may "'to some degree'" "'inflict criminal punishment and serve as a deterrent,'" the $12,000 of restitution ordered in this case is simply not enough to meet the retributive needs of § 3553(a)(2)(A). *See* AB.13 (quoting *United States v. Anthony*, 25 F.4th 792, 798 (10th Cir. 2022)). The district court imposed the restitution mandated by statute. *See* 18 U.S.C. § 2259; 1Appx.98. The amount of restitution imposed was not based on a deliberative judgment as to the culpability of Crosby's conduct; it was based on the fact that only six of his victims happened to file claims. 2Appx.11 ¶ 34. Nothing in the district court's discussion suggests that the court intended the restitution to serve the purpose of retribution. 1Appx.98. And even if it did, it is woefully insufficient to provide just punishment for Crosby's crimes. Twelve thousand dollars barely buys a serviceable used car. Crosby will be required to pay no more than $200 a month, or 10% of his monthly income. *Id*. This in no way

---

Pennsylvania (where his cases were transferred for supervision) revoked Crosby's supervised release after he downloaded computer-generated animated images of child sexual abuse. *See United States v. Crosby*, No. 2:23-cr-243-CCW (W.D. Pa.), Doc. 9, 22; No. 2:23-cr-244, Doc. 10, 22. The court sentenced him to 15 months' imprisonment and then reduced his term of supervised release to 10 years to be served upon completion of his revocation sentence. Doc. 22. This reduction highlights the precariousness of relying on a term of supervised release to do the work of retribution when it can be modified at any time. *See* 18 U.S.C. § 3583(e).

4

adequately reflects the seriousness of Crosby's conduct, the harm imposed on his victims, or the need to promote respect for the law.

Crosby takes issue with the United States' reliance on *United States v. Walker*, 844 F.3d 1253 (10th Cir. 2017), for the proposition that Crosby's five-day pretrial detention does not constitute punishment. AB.15 (citing OB.28). In *Walker*, this Court found that Walker's "33 days in pretrial detention and 13 months in a residential treatment program" "did not provide any punitive sanctions for the two bank robberies." *Id.* at 1259. It pointed out that Walker was "temporarily detained for 33 days because he had requested postponement of his detention hearing and confinement was statutorily required prior to the hearing." *Id.* Similarly, here, Crosby's five-day sentence merely reflects the amount of time he waited for his detention hearing. 2Appx.2.

Instead of focusing on the proposition for which *Walker* was cited, Crosby seeks to distinguish his case from *Walker* on its facts. AB.15–16. Crosby's situation, of course, does not lend itself to direct comparison with a career offender who robbed two banks. But the district court here made some of the same misjudgments as the district court in *Walker*. In *Walker*, "the district court focused almost exclusively on Mr. Walker's newfound sobriety" 844 F.3d at 1259. Here, the district court also focused almost entirely on Crosby's recently-diagnosed autism. *See* 1Appx.89–91. And both district

5

courts misevaluated the § 3553(a) factors in the same way: "[B]y declining to impose any prison time," they "effectively failed to give any weight to the congressional values of punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentencing disparities." *Walker*, 844 F.3d at 1259. Despite its factual distinctions, *Walker* illustrates the same error committed by the district court here.

**B.    The district court's overemphasis on Crosby's history and characteristics is manifestly unreasonable.**

Crosby's characterization of the United States' argument as a dispute over the weight the district court assigned to his autism diagnosis misunderstands the United States' position. AB.8. The United States recognizes that Crosby's autism diagnosis was an appropriate sentencing consideration and may well have supported some degree of variance from his guideline range. But the district court exceeded the limits of discretion when it imposed a sentence based almost entirely on Crosby's diagnosis that disregarded the other § 3553(a) purposes.

Crosby's reliance on *United States v. DeRusse*, 859 F.3d 1232 (10th Cir. 2017), is misplaced. AB.9. In *DeRusse*, this Court affirmed a downward variance in a kidnapping case from a guideline range of 108 to 135 months to a sentence of 70 days, time served. *Id.* at 1234–35. The district court based the variance on the role that the defendant's serious mental illness and

6

immaturity played in the offense, which was entirely aberrant behavior for the defendant. *Id.* at 1235–36. In reviewing the variance, this Court rejected the government's argument that the district court gave improper weight to the defendant's mental illnesses where they "led to the delusional thinking that caused him to commit such an out-of-character crime." *Id.* at 1238.

*DeRusse* stands in contrast to Crosby's case. There is no indication that Crosby's autism and mental health issues were anywhere as extreme as the delusional thinking caused by DeRusse's severe mental illness. Despite his undiagnosed conditions, Crosby graduated from high school and successfully served in the U.S Air Force during the same ten-year time period when he was downloading child pornography. *See* AB.18; 2Appx.8 ¶¶ 23–24, 16 ¶ 68, 17–19 ¶ 72. Moreover, there is no way to characterize Crosby's conduct as aberrant or out-of-character. Crosby downloaded child pornography for over a decade. 2Appx.10 ¶ 28. And even after he was caught by law enforcement, his collection was seized, and he was other-than-honorably discharged from the Air Force, he continued to download child pornography. *Id.* at 10 ¶¶ 28, 30. Crosby's case is very different from *DeRusse*.

As Judge Baldock observed in his thoughtful dissent in *DeRusse*:

> [A] large percentage of individuals who commit heinous crimes can point to *some* mitigating factor—drug addiction, childhood abuse, a life of poverty, etc.—that partially fuels their decision to commit those crimes. But whatever effect these factors should have on lessening their sentences, they are almost

7

> never so significant that they warrant letting these individuals
> walk away with time-served sentences.

*DeRusse*, 859 F.3d at 1242 (emphasis in original). This certainly holds true in

Crosby's case. Crosby's diagnoses may help explain his behavior, but they

should not excuse him from facing appropriate consequences for his serious

and longstanding criminal conduct.

### C. The sentence imposed does not reflect the need for general deterrence under § 3553(a)(2)(B).

Crosby argues that the five-day sentence combined with $12,000 in

restitution promotes general deterrence. AB.16. But it is hard to see how.

Crosby's sentence, even taking into account his restitution, does not convey to

would-be offenders that the possession of child pornography is a serious

offense that will result in significant punishment. On the contrary, it

suggests that it is a relatively minor crime that may result in nothing more

than a modest financial penalty. Crosby's sentence undermines the purpose

of general deterrence.

Crosby argues that restitution has "a more precise deterrent effect,"

citing *Kelly v. Robinson*, 479 U.S. 36, 49 n.10 (1986). AB.16. But this is only

as compared to "a traditional fine, paid to the States as an abstract and

impersonal entity, and often calculated without regard to the harm the

defendant has caused." *Kelly*, 479 U.S. at 49 n.10. This comparison between

restitution and fines (which were not imposed here) does not speak to

whether five days' imprisonment and $12,000 in restitution affords adequate deterrence to would-be child-pornography offenders.

**D.  The sentence is insufficient to promote incapacitation as required by § 3553(a)(2)(C).**

Crosby contends that the United States' concern regarding his "real-time recidivism," as it pertains to § 3553(a)(2)(C), was rejected by the district court through its reliance on Dr. Joy's findings that "'individuals who commit child pornography offenses are lower risk for recidivism than other sex offenders'" and that "'[a]utistic individuals'" like Crosby "'are likely to follow rules when set in place.'" AB.10–11 (quoting 1Appx.90). But as explained in the opening brief at 33–34, Crosby's documented history of reoffending demonstrates that these generalized observations do not hold true in Crosby's case. Crosby points out that the district court "'need not rely on every single factor'" under § 3553(a) in imposing a sentence. AB.11 (quoting *United States v. Barnes*, 890 F.3d 910, 916 (10th Cir. 2018)). But the recognition that some § 3553(a) factors may be more applicable than others in a given case does not permit the district court to disregard directly relevant information regarding an applicable § 3553(a) factor. To conclude that Crosby posed a low risk of recidivism because his offense involved child pornography or because he is autistic—when Crosby had *already* reoffended after being caught once with child pornography—was an abuse of discretion.

9

Crosby also points to the district court's imposition of a special condition of supervised release requiring location monitoring in an attempt to show that the district court's sentence provided for the need to deter Crosby from committing future crimes. AB.11, 16–17. But given the nature of his crimes, Crosby can reoffend from his own bedroom—all he needs is the internet. The location monitoring may constrain Crosby's freedom, but it does not effectively incapacitate him from possessing child pornography.

### E.    Crosby's sentence creates an unwarranted sentencing disparity that § 3553(a)(6) instructs courts to avoid.

Regarding the need to avoid unwarranted sentencing disparities, Crosby argues that extraordinary circumstances are not required for a sentence outside the guideline range, citing *Gall*, 552 U.S. at 47. AB.17–18. While true, extraordinary circumstances remain relevant in evaluating whether a sentencing disparity among similarly-situated defendants is warranted. Indeed, a comparison "among defendants with similar records who have been found guilty of similar conduct" is expressly required by § 3553(a)(6). And in conducting substantive reasonableness review, this Court looks to whether the parties have identified cases with similar sentences for similar conduct. *See Walker*, 844 F.3d at 1258. In its opening brief, the United States identified numerous cases in which child-pornography offenders received sentences far longer than Crosby's. OB.37–

10

39, 41 n.11. Crosby, on the other hand, identifies no sentence of comparable lenience that has been affirmed on appeal. AB.17–18.

Instead, Crosby emphasizes the uniqueness of his personal circumstances. Citing his recent autism diagnosis, he takes issue with the United States' observation that most child-pornography offenders have psychological issues, OB.37, pointing out that autism is not a "psychological issue," but a "developmental, neurological disorder."[4] AB.17–18. This distinction is not material. While the United States' general point was not tailored to Crosby's specific diagnosis, it cited three cases in which child-pornography offenders with autism (or Asperger's Syndrome, which is now recognized as a form of autism) were sentenced to substantially longer sentences than Crosby. OB.37 n.9. Crosby's autism diagnosis does not explain the extreme difference between his sentence and that of other similarly-situated defendants.

Crosby also cites his service in the U.S. Air Force, his lack of criminal history, his high-school education, and his full-time employment. AB.18. But an educated, successful defendant is not more deserving of a lenient sentence than a poor, unemployed defendant convicted of the same conduct. *See United*

---

[4] Crosby's sentence also took into account his depression and other mental health concerns, which can fairly be characterized as psychological issues. 1Appx.90, 95.

*States v. Sample*, 901 F.3d 1196, 1199–1200 (10th Cir. 2018). Factors such as military service, education, and employment successes are frequently cited at sentencing to show that the defendant's criminal conduct was an aberration, totally out of character for an otherwise law-abiding citizen. But here, Crosby was possessing and trading child pornography the entire time he was racking up these achievements. 2Appx.8 ¶ 24, 10 ¶ 28. His criminal activities were not an aberration; they were routine. Moreover, Crosby's successes stand in tension with his reliance on his autism diagnosis to explain why a more lenient sentence is warranted. His ability to succeed, even in a highly-regimented military career, despite "his social deficits" and "restricted interests," does not suggest that his autism rendered him unable to comply with the law prohibiting possession of child pornography. *See* 1Appx.90.

Beyond Crosby's autism and professional and educational history, already discussed above, Crosby points to his briefing before the district court without raising any of the substantive issues contained therein. AB.17. Tenth Circuit Rule 28.3 disapproves of the practice of incorporating portions of district-court briefs by reference. Under that Rule, such references do "not satisfy the requirements of Federal Rules of Appellate Procedure 28(a) and (b)." Crosby has waived these arguments by not presenting them in his

12

answer brief.[5] *See United States v. Gordon*, 710 F.3d 1124, 1137 n.15 (10th Cir. 2013).

Crosby also cites *Gall* for the proposition that a time-served sentence avoids unwarranted sentencing disparities. AB.17. *Gall*, however, merely stated that on the facts of that case, the district court "considered the need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated." 552 U.S. at 55 (emphasis in original). *Gall* cited specific facts from the record showing why Gall was not similarly situated to one of his co-defendants, who was "in the conspiracy at its end and therefore was sentenced under the more severe Guidelines," "had a more serious criminal history," and "did not withdraw from the conspiracy." *Id. Gall* observed that the district court distinguished Gall from his codefendants who, unlike Gall, did not withdraw from the conspiracy or rehabilitate themselves in the way Gall had done. *Id.* at 55–56. In sum, *Gall* affirmed a probationary sentence where the district court meaningfully distinguished between codefendants on a reasonable basis. *Gall* provides an example of how a probationary sentence avoided unwarranted sentencing similarities under the particular facts of

---

[5] In any event, the sentencing statistics cited in Crosby's district-court briefing involve downward variances generally, but offer no specific sentences with which to compare Crosby's five-day sentence. 2Appx.71–72. The briefing also references the district court's policy-based disagreement with USSG § 2G2.2, which is discussed above at page 2 and in the opening brief at 35–36.

that case, but it offers no support for the generalized proposition that a time-served sentence serves the purpose of avoiding sentencing disparities.

Finally, Crosby argues that this Court should defer to the district court's finding that the sentence imposed addressed the need to avoid unwarranted sentencing disparities. AB.18. But the district court offered no explanation for how a time-served sentence helps avoid sentencing disparities in this case, *see* 1Appx.89, the record reveals no basis for this conclusion, and Crosby has supplied none on appeal.

### F.    The need for restitution cannot justify such a lenient sentence.

Crosby distinguishes his case from *Sample*, 901 F.3d 1196, because unlike *Sample*, the district court here did not focus entirely on restitution at the expense of all other sentencing factors. AB.19. Be that as it may, the point of the United States' citation to *Sample* is simply that restitution alone cannot justify a downward variance where the variance does not comply with the other purposes set forth in § 3553(a). OB.39–40. If the need for restitution was paramount, noncustodial sentences would always be preferred because they necessarily provide more opportunity for income and thus payment of restitution. But because restitution cannot "overrid[e] all other sentencing considerations," *Sample*, 901 F.3d at 1200, this factor alone cannot save

14

Crosby's sentence where it otherwise fails to meet the purposes of sentencing in § 3553(a).[6]

### G.  *Cookson* supports reversal.

Crosby objects to the United States's reliance on *United States v. Cookson*, 922 F.3d 1079 (10th Cir. 2019).[7] AB.19–20. Crosby argues that unlike Cookson, he was not a recidivist offender because he committed his second child-pornography offense before he could be convicted on his first. AB.19. He relies on *Black's Law Dictionary* (11th ed. 2019), which defines a recidivist as:

1.  Someone who has been convicted of multiple criminal offenses, usu[ally] similar in nature; a repeat offender . . . .

---

[6] In a footnote in his facts section, Crosby states, "The Government's brief does not acknowledge the district court's analysis and consideration of 18 U.S.C. § 3553(a)(2)(D) and (3)." AB.4 n.2. Because Crosby provides no additional argument on these factors, the United States will not address them further beyond pointing to OB.40, which addresses the district court's analysis of the need for rehabilitation under § 3553(A)(2)(D). As to § 3553(a)(3), the district court did not address this factor other than its introductory reference to "the kind of sentences available pursuant to 3553(a)(3)," 1Appx.89, and no party requested a different kind of sentence, such as probation or a fine, *see* 2Appx.30.

[7] Crosby contends that *Cookson* does not preclude a probationary sentence. AB.19. Crosby's sentence was not probationary; he was sentenced to five-day's custody and a term of supervised release. 1Appx.104–05. As discussed above at page 3, this makes a difference in whether the district court could consider retribution under § 3553(a)(2)(A) in imposing probation or supervised release. *See* 18 U.S.C. §§ 3562(a), 3583(c).

15

2.    A criminal who, having been punished for illegal activities, resumes those activities after the punishment has been completed . . . .

Crosby certainly meets the second definition—he received punishment for his first offense in the form of an other-than-honorable discharge from the Air Force and seizure of his devices, and yet he continued to download and possess child pornography.

Ultimately, whether Crosby meets the technical definition of a recidivist or not is beside the point. The fact remains that despite his other-than-honorable discharge and the seizure of his child pornography collection by law enforcement, Crosby continued to violate the law and was charged and convicted in not *one*, but *two* separate cases for possession of child pornography. 2Appx.4 ¶¶ 1–3. This is an aggravating factor that warrants more severe punishment and suggests that Crosby has an increased risk of reoffending. While the district court clearly considered this factor, *see* AB.20, it is not reflected in Crosby's lenient sentence.

Crosby also points out that *Cookson* is distinguishable because the defendant there had prior criminal convictions where Crosby does not. AB.19–20. Crosby ignores, however, that the district court in *Cookson* found that the defendant's criminal history was overrepresented, noting that four out of his six criminal-history points were for a misdemeanor marijuana-possession charge. 922 F.3d at 1086. This criminal history for a minor charge

16

unrelated to child pornography is far less concerning than Crosby's repeated possession of child pornography.

While *Cookson* did not "foreclose the possibility that a more detailed explanation from the district court of the weight it afforded § 3553(a) factors other than § 3553(a)(1) could yield a similar, but substantively reasonable, sentence on remand," 922 F.3d at 1096, this was a result of the unique challenge of reviewing the district court's sentence in *Cookson*. This Court concluded that Cookson's sentence was not substantively reasonable based "in large part" "on the significant variance in Mr. Cookson's sentence and the district court's limited and inconsistent explanation for that variance" (including its misunderstanding of the plea agreement). *Id.* at 1095. This reasoning meant that the district court enjoyed greater discretion on remand. This is because "the heavier [this Court's] reliance on the inadequacy of the district court's explanation . . ., the less [this Court's] decision restricts the bounds of reasonable choice available to the district court in crafting a sentence on remand." *Id.* at 1092 (quotation omitted). Here, in contrast, the district court's explanation for Crosby's sentence sets forth its reasons for the variance and allows for meaningful review by this Court. The problem is not the adequacy of the district court's explanation; it is its substance. Because the district court's sentence exceeds the bounds of permissible choice, a more

17

detailed explanation cannot cure Crosby's substantively unreasonable five-day sentence.

## CONCLUSION

The district court's five-day, time-served sentence for two child-pornography cases exceeds the bounds of permissible choice. This Court should vacate the sentence and remand for resentencing.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*s/ Tiffany L. Walters*

TIFFANY L. WALTERS
Assistant U.S. Attorney
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 346-7274
Tiffany.Walters2@usdoj.gov

## **<u>TYPE-VOLUME CERTIFICATION</u>**

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief contains 3,958 words. I relied on my word processor to obtain the count. My word processing software is Word 2016.

*s/ Tiffany L. Walters*
TIFFANY L. WALTERS
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION</u>

I HEREBY CERTIFY that the foregoing brief was filed with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on March 25, 2024, and that seven photocopies of the foregoing brief will be sent by Federal Express to the United States Court of Appeals for the Tenth Circuit, Office of the Clerk, located at the Byron White United States Courthouse, 1823 Stout Street, Denver, Colorado, 80257, following notification that the electronic brief is compliant.

I ALSO CERTIFY that Amanda Skinner, attorney for Defendant-Appellee Thomas Crosby, is a registered CM/ECF user, and that service will be accomplished by the appellate CM/ECF system.

*s/ Tiffany L. Walters*
TIFFANY L. WALTERS
Assistant United States Attorney
